02-09-266-CR & 02-09-268-CR














 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NOS.  02-09-00266-CR

                                                           02-09-00268-CR

 

 


 
 
 EX PARTE JOSEPH P. DANGELO
 
 
  
 
 
  
 
 


                                                                                                                             

                                                                                                                             

------------

 

FROM THE 371ST DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

OPINION ON REHEARING

 

------------

We
grant the State=s
motion for rehearing, we withdraw the opinion issued in this case on June 17,
2010, and we substitute the following opinion in its place.  In two points, appellant Joseph P. Dangelo appeals the trial court=s
denials of his preconviction applications for a writ
of habeas corpus.  We affirm in part
and reverse and remand in part.

Background
Facts

In
2004, a grand jury indicted appellant with four sex-related felony offenses against
a child who was younger than fourteen years old.  In February 2008, appellant entered into a
plea agreement in which he received written admonishments, waived statutory and
constitutional rights, and pled guilty only to injury to a child, which is not
by statutory language a sex-related offense and which, as charged in appellant=s
amended indictment, is a third-degree felony.[1]  See Tex. Penal Code Ann. '
22.04(a)(3), (f) (Vernon Supp. 2010).  The trial court deferred adjudication
of appellant=s guilt
for injury to a child and placed him on community supervision for seven years.

The
original terms of appellant=s
community supervision prohibited him from contacting the complainant of his
crime in any manner and precluded his unsupervised access to any child under
seventeen years old (except for one specifically designated child); the terms
did not require him to complete sex offender treatment.[2]  However, in May 2008, the trial court signed
an amendment to appellant=s
community supervision terms.[3]  The amendment included provisions that
precluded his participation in several sex-related acts and required him to A[a]ssume responsibility for [his] offense,@ submit
to a sex offender treatment evaluation Aas
directed by the supervision officer,@
complete psychological sex offender counseling, and A[s]ubmit to . . . and show no deception on any polygraph
examination . . . as directed by the Court or supervision officer.@  The trial court signed another amendment in
January 2009 that required appellant to restart his sex offender treatment Awith PSY as directed by the supervision officer@ but
dismissed the State=s
petition for the trial court to proceed to adjudication of his guilt.[4]  Appellant filed objections to the amended
terms.

On
March 4, 2009, appellant=s
counsel sent a letter to Psycho Therapy Services; the letter stated in part,

Certainly we object
to any required treatment programs which lie outside those required to and have
no relationship to the crime which [appellant] pled to, or relate to conduct
which is not itself criminal, or requires conduct that is not reasonably
related to the future criminality of Mr. Dangelo and
does not serve the statutory ends of his deferred adjudication.

 

. . . .   

 

Mr. Dangelo has no objections to polygraph examinations which
in the course of your program he may be subjected to. However, Mr. Dangelo has Fifth Amendment protection against making any
incriminating statements and has a right to so state, relating to any conduct
for which he has not pled or for which he is not on deferred adjudication.  Thus, he will not answer any questions
relating to sexual conduct which he did not commit and for which he has not
been accused.

 

An
affidavit from appellant was attached to the letter; the affidavit states that
he had been told by one of Psycho Therapy Services’ employees that Aas part
of the Sexual Treatment Program [appellant] was
required to admit any sexual offense.@  The affidavit also explains that appellant
had been notified that if he did not intend to answer questions regarding
sexual offenses, he should not attend the therapy session.

On
March 27, 2009, appellant filed an application for a writ of habeas corpus,
asking the court to Adismiss
the added conditions of probation.@  In the application, he contended that the
trial court=s
community supervision conditions violate his rights against compelled
self-incrimination under the Texas and federal constitutions and that the trial
court=s requiring him to undergo sex offender
treatment is not authorized by the code of criminal procedure because he did
not plead guilty to a sex-related offense.

On July
10, 2009, the trial court declared that appellant=s bond
was insufficient and ordered a warrant to be issued for his arrest because of
his failure to submit to a polygraph exam; he was arrested the same day.  Five days later, appellant filed two more
applications for writs of habeas corpus. 
Those applications asserted that he had a constitutional right not to
answer the questions that were proposed to be asked in the polygraph exam.

Appellant
attached a July 9, 2009 letter to both applications that was addressed from The
Polygraph Science Center to a probation officer regarding appellant=s refusal
to submit to the exam.  The letter
explained that appellant=s
probation officer had referred him to the center for the exam and that
appellant had arrived at the center but had refused to answer the following
questions: (1) ASince you
have been on probation, have you had [sic] violated any of the conditions?@; (2) ASince
you have been on probation, have you had sexual contact with any persons
younger than 17?@; (3) ASince
you have been on probation, have you tried to isolate any child for sexual
purposes?@; and (4) ASince
you have been on probation, have you intentionally committed any sexual crimes?@

The
State filed responses to appellant=s writ
applications, attaching offense reports and other documents that detailed the
sexually-related alleged facts that resulted in his original four sex offense
charges.  In June 2009, the State filed
proposed findings of fact and conclusions of law, and the next month, the trial
court adopted those findings and conclusions, denied appellant=s writ
applications, and stated that his bond was insufficient and that he would be
released from jail only to take the scheduled polygraph exam.[5]  Appellant filed notices of these appeals.

Standard
of Review

          Although appellant filed his writ
applications under multiple constitutional and statutory provisions, we must
review the applications under article 11.072 of the code of criminal procedure,
which Aestablishes
the procedures for an application for a writ of habeas corpus in a felony or
misdemeanor case in which the applicant seeks relief from an order or a
judgment of conviction ordering community supervision.@  Tex. Code Crim. Proc. Ann.
art. 11.072, ' 1
(Vernon 2005); see Ex parte Villanueva, 252 S.W.3d
391, 397 (Tex. Crim. App. 2008) (A[I]t is
clear that the Legislature intended Article 11.072 to provide the exclusive
means by which the district courts may exercise their original habeas
jurisdiction . . . in cases involving an individual who is either serving a
term of community supervision or who has completed a term of community
supervision.@).

Habeas
corpus is an extraordinary writ used to challenge the legality of one=s
restraint.  Tex. Code
Crim. Proc. Ann. art. 11.01 (Vernon 2005); Ex parte
Bennett, 245 S.W.3d 616, 618 (Tex. App.—Fort
Worth 2008, pet. ref=d).  Absent a clear abuse of discretion, we must
affirm the trial court=s
decision on whether to grant the relief requested in a habeas corpus
application.  Ex parte Karlson, 282 S.W.3d 118, 127–28 (Tex. App.—Fort Worth 2009, pet. ref=d);
Ex parte Bruce, 112 S.W.3d 635, 639 (Tex. App.—Fort Worth 2003, pet. dism=d).  In reviewing the trial court=s
decision, we view the evidence in the light most favorable to the ruling and
accord great deference to the trial court=s
findings and conclusions.  Karlson, 282 S.W.3d at 127; see
Ex parte Amezquita, 223 S.W.3d
363, 367 (Tex. Crim. App. 2006).

Appellant=s Fifth
Amendment Right

In his
first issue, appellant contends that the trial court=s decision
to declare his bond insufficient (and to therefore incarcerate him) because he
refuses to answer the questions that were proposed in the polygraph exam
violates his right to remain silent and not incriminate himself under the Texas
and federal constitutions.  Trial courts
have wide discretion to impose reasonable community supervision terms that are
in the defendant=s, the
victim=s, and
society=s best
interests.  See Butler v. State,
189 S.W.3d 299, 303 (Tex. Crim. App. 2006); Speth v. State, 6 S.W.3d
530, 533 (Tex. Crim. App. 1999) (describing the granting of supervision as a Aprivilege, not a
right@), cert. denied, 529 U.S. 1088
(2000); Belt v. State, 127 S.W.3d 277, 280
(Tex. App.—Fort Worth 2004, no pet.) (explaining that
we review imposition of community supervision conditions under an abuse of
discretion standard); see also Flores v. State, 904 S.W.2d
129, 130 (Tex. Crim. App. 1995) (stating that there Ais no
fundamental right to receive probation@), cert.
denied, 516 U.S. 1050 (1996). 
Requiring a polygraph examination may be a reasonable condition of
community supervision.  See Ex parte
Renfro, 999 S.W.2d 557, 560 & n.4 (Tex. App.—Houston [14th Dist.] 1999, pet. ref=d); see
also Leonard v. State, 315 S.W.3d 578, 580 (Tex.
App.—Eastland 2010, pet. granted) (APolygraph
examinations are regularly imposed as a condition of community supervision for
sex offenders.@).

The
Texas legislature has explained that the purpose of the community supervision
statute is to remove Afrom
existing statutes the limitations, other than questions of constitutionality,
that have acted as barriers to effective systems of community supervision in
the public interest.@  Tex. Code Crim. Proc. Ann.
art. 42.12, ' 1
(Vernon Supp. 2010) (emphasis added). 
Thus, the trial court=s broad
authority to create community supervision terms does not extend to imposing
terms that violate a defendant=s constitutional rights as
balanced with the goals of the defendant=s
probation.  See Flores, 904
S.W.2d at 131 (examining the constitutionality of a
trial court=s
community supervision decision); Tamez v.
State, 534 S.W.2d 686, 692 (Tex. Crim. App. 1976)
(invalidating a probation condition because it was unconstitutional); see
also Briseño v. State, 293 S.W.3d
644, 648 (Tex. App.—San Antonio 2009, no pet.) (stating
that a community supervision condition Ais not
necessarily invalid simply because it affects [the defendant=s]
ability to exercise constitutionally protected rights@) (quoting Lee v. State, 952 S.W.2d
894, 900 (Tex. App.—Dallas 1997, no pet.) (en
banc)).  As the Supreme Court stated in Griffin
v. Wisconsin,

To a greater or
lesser degree, it is always true of probationers (as we have said it to be true
of parolees) that they do not enjoy Athe absolute
liberty to which every citizen is entitled, but only . . . conditional liberty
properly dependent on observance of special [probation] restrictions.@

 

These restrictions
are meant to assure that the probation serves as a period of genuine rehabilitation
and that the community is not harmed by the probationer=s being at large. .
. .  Supervision, then, is a Aspecial need@ of the State
permitting a degree of impingement upon privacy that would not be
constitutional if applied to the public at large.  That permissible degree is not unlimited,
however . . . .

 

483
U.S. 868, 874–75, 107 S. Ct. 3164, 3169 (1987) (citation omitted) (quoting
Morrissey v. Brewer, 408 U.S. 471, 480, 92 S. Ct. 2593, 2600 (1972)).

The
Fifth Amendment to the United States Constitution provides that no person Ashall
be compelled in any criminal case to be a witness against himself.@[6] U.S.
Const. amend. V; see Ramos v. State, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (explaining that the
Fifth Amendment applies in state court proceedings); Chapman v. State,
115 S.W.3d 1, 5 (Tex. Crim. App. 2003) (AIt is a
fundamental tenet of Texas and federal constitutional jurisprudence that every
person has the right to avoid self‑incrimination
by exercising the privilege provided him by the Fifth Amendment and the Texas
Constitution.@).  The Fifth Amendment privilege not only
extends to answers that would in themselves support a conviction, Abut
likewise embraces those which would furnish a link in the chain of evidence
needed to prosecute.@  Ohio v. Reiner, 532 U.S. 17, 20, 121
S. Ct. 1252, 1254 (2001) (quoting Hoffman v. United States, 341 U.S.
479, 486, 71 S. Ct. 814, 818 (1951)).

The
United States Supreme Court has examined a probationer=s Fifth
Amendment right against compelled self-incrimination.[7]
 See Minnesota v. Murphy, 465 U.S.
420, 422, 104 S. Ct. 1136, 1139 (1984). 
The Court=s
opinion revealed the following background facts.

Prosecutors
charged Murphy for criminal sexual conduct, but he pled guilty to a reduced
charge of false imprisonment, and the trial court placed him on a three-year
probation term.  Id.
at 422, 104 S. Ct. at 1139. 
Conditions of his probation required him to participate in sex offender
treatment and be truthful with his probation officer Ain all
matters.@  Id. 
He eventually told a sex offender counselor that he had previously
committed a murder that was unrelated to the charge he had pled guilty to, and
the counselor told Murphy=s
probation officer of the confession.  Id. at 423, 104 S. Ct. at 1140.  At Murphy=s next
meeting with his probation officer, the officer informed Murphy about the
information that she had received, and Murphy admitted that he had committed
the murder.  Id.
at 424, 104 S. Ct. at 1140. 
Based on the admission, a grand jury indicted him for murder.  Id. at 425, 104 S.
Ct. at 1141.

Murphy
sought to suppress testimony about his confession on Fifth Amendment grounds,
and although the trial court denied his motion to do so, the Minnesota Supreme
Court reversed.  Id.
at 425, 104 S. Ct. at 1141.  In reversing the Minnesota Supreme Court,
the United States Supreme Court stated that the Fifth Amendment prohibition
against compelled self-incrimination Anot
only permits a person to refuse to testify against himself at a criminal trial
in which he is a defendant@ but
also A>privileges
him not to answer official questions put to him in any other proceeding, civil
or criminal, formal or informal, where the answers might incriminate him in
future criminal proceedings.=@  Id. at 426, 104 S. Ct. at 1141 (quoting
Lefkowitz v. Turley, 414 U.S. 70, 77,
94 S. Ct. 316, 322 (1973)).  In the
course of ultimately deciding the case on the ground that Murphy did not timely
assert his Fifth Amendment rights, the Court explained,

A defendant does
not lose [Fifth Amendment protection] by reason of his conviction of a crime;
notwithstanding that a defendant is imprisoned or on probation at the time he
makes incriminating statements, if those statements are compelled they are
inadmissible in a subsequent trial for a crime other than that for which he has
been convicted. . . .

 

. . . .

 

. . .  If [a defendant asserts Fifth Amendment
rights], he Amay not be required
to answer a question if there is some rational basis for believing that it will
incriminate him, at least without at that time being assured that
neither it nor its fruits may be used against him@ in a subsequent
criminal proceeding.

 

Id. at
426, 429, 104 S. Ct. at 1141–43 (quoting Maness v. Meyers, 419 U.S. 449,
473, 95 S. Ct. 584, 598 (1976) (White, J., concurring)).

While
the Court therefore indicated that a probationer=s Fifth
Amendment right against compelled self-incrimination would be violated by
authorities requiring him to answer questions Athat
would incriminate him in a pending or later criminal prosecution,@ it
also stated,

The situation would
be different if the questions put to a probationer were relevant to his
probationary status and posed no realistic threat of incrimination in a
separate criminal proceeding. If, for example, a residential
restriction were imposed as a condition of probation, it would appear unlikely
that a violation of that condition would be a criminal act.  Hence, a claim of the Fifth Amendment
privilege in response to questions relating to a residential condition could
not validly rest on the ground that the answer might be used to incriminate if
the probationer was tried for another crime. 
Neither, in our view, would the privilege be available on the ground
that answering such questions might reveal a violation of the residential requirement
and result in the termination of probation.  Although a revocation proceeding must comport
with the requirements of due process, it is not a criminal proceeding.  Just as there is no right to a jury trial
before probation may be revoked, neither is the privilege against compelled self‑incrimination available to a probationer. It follows
that whether or not the answer to a question about a residential requirement is
compelled by the threat of revocation, there can be no valid claim of the
privilege on the ground that the information sought can be used in revocation
proceedings.

 

. . .  [N]othing in the
Federal Constitution would prevent a State from revoking probation for a
refusal to answer that violated an express condition of probation . . . .

 

Id. at 435
& n.7, 104 S. Ct. at 1146 & n.7 (citations omitted) (emphasis added).  Thus, if a condition of a defendant=s
probation requires the defendant to admit to an offense that could lead to
criminal charges independent of those that the defendant is serving probation for, the defendant has a Fifth Amendment right to not answer
such questions.[8]  But to the extent that a state asks questions
only about probation violations that do not comprise independent offenses, the
defendant does not have a Fifth Amendment right to not answer those
questions.  Id.; see Chapman,
115 S.W.3d at 6 (stating that a probationer has a
right Aagainst
self‑incrimination concerning statements that
would incriminate him for some other offense@); Bridwell v. State, 804 S.W.2d
900, 906 (Tex. Crim. App. 1991) (citing Murphy for the proposition that
the privilege against self-incrimination is Anot
available to [a] probationer questioned by [a] probation officer@); see
also United States v. Locke, 482 F.3d 764, 767
(5th Cir. 2007) (holding that the defendant=s Fifth
Amendment right against compelled self-incrimination had not been infringed
because his answers to a polygraph examination Acould
not serve as a basis for a future criminal prosecution.  A probationer may only invoke the Fifth
Amendment privilege if a truthful answer would incriminate the probationer by
exposing him to prosecution for a different crime.@) (emphasis added).[9]

As
explained above, appellant=s first
point is based in part on the trial court=s
incarcerating him because of his refusal to answer the following questions on
Fifth Amendment grounds:  (1) ASince
you have been on probation, have you had [sic] violated any of the conditions?@; (2) ASince
you have been on probation, have you had sexual contact with any persons
younger than 17?@; (3) ASince
you have been on probation, have you tried to isolate any child for sexual
purposes?@; and (4) ASince
you have been on probation, have you intentionally committed any sexual crimes?@  The first question asks only about community
supervision violations, not about independent criminal activity, and appellant
therefore does not have a Fifth Amendment right to refuse to answer the
question.  See
Murphy, 465 U.S. at 435 n.7, 104 S. Ct. at 1146 n.7.  Thus, to
the extent that the trial court=s
denials of appellant=s writ
applications could be based on his refusal to answer the first question, we
overrule appellant=s first
point.

The
State has conceded, and we conclude, that the second and fourth questions ask
about independent crimes rather than mere community supervision violations and
that under the authority cited above, appellant has a Fifth Amendment right to
refuse to answer those questions.  Thus, to
the extent that the trial court=s denials
of appellant=s writ
applications may be based on his refusal to answer those two questions, we
sustain appellant=s first
point.[10]

The
State argues that question three (isolation of a child for sexual purposes)
inquires whether appellant committed Aa mere
probation violation@ and
that the question poses Ano
realistic threat of incrimination.@  However, we conclude that question three
exceeds asking only about a violation of appellant=s
community supervision and provides at least a link in the chain to appellant=s
responsibility for an independent offense.[11]  See Reiner, 532 U.S. at 20, 121 S. Ct.
at 1254.  The penal code states that a
person commits the offense of criminal attempt Aif,
with specific intent to commit an offense, he does an act amounting to more
than mere preparation that tends but fails to effect the commission of the
offense intended.@  Tex. Penal Code Ann. ' 15.01(a)
(Vernon 2003); see Yalch v. State, 743 S.W.2d 231, 233 (Tex. Crim. App. 1988).  We conclude that Atr[ying] to isolate any child@ could
qualify as an Aact
amounting to more than mere preparation@ and
that Afor sexual purposes@ could
serve as Aspecific
intent to commit an offense@ such
as attempted indecency with a child, attempted sexual assault of a child, attempted
sexual performance by a child, or other attempted offenses that involve a
defendant=s act
and sexual intent with regard to children. 
See Tex. Penal Code Ann. '
15.01(a), ''
21.11(a), 22.011(a)(2), 43.25(b) (Vernon Supp. 2010); cf.
Laster v. State, 275 S.W.3d 512, 516, 522–23 (Tex. Crim. App. 2009) (holding
that the evidence was sufficient to prove attempted aggravated kidnapping when
a defendant briefly grabbed a young girl by her waist and pulled her with the
inferred purpose to secrete her).

Thus,
even while giving great deference to the trial court=s
conclusion that appellant cannot refuse to answer question three on Fifth
Amendment grounds, we must overrule that conclusion.  To the extent that appellant=s first
point challenges the trial court=s
denials of his writ applications as related to his refusal to answer question
three, we hold that the trial court abused its discretion by denying the
applications and sustain the point.[12]

Appellant
also argues in his first point that the sex offender counseling program
requires him to admit Ato the
sexual crime for which the counselor believes he is being counseled.@  A term of appellant=s
community supervision states that he must A[a]ssume responsibility for [his] offense.@  One of the trial court=s findings
of fact states, AAs part
of treatment, [appellant] is required to admit and discuss the facts of this
offense.@

The
State contends that appellant=s Fifth
Amendment right against self-incrimination does not apply to him discussing the
facts of the remaining four indicted offenses because further prosecution of
the offenses is barred by double jeopardy and he has Ano
realistic threat of future criminal prosecution@ on the
facts comprising the alleged offenses. 
Furthermore, the State represents that appellant is Asafe
from additional prosecution@ on the
underlying facts of this case.

We view
these statements as binding concessions that the State will never use the facts
relating to the indicted offenses, if any, for a future criminal proceeding on
the indicted offenses or new offenses.[13]  See, e.g., Bryant v. State, 187 S.W.3d 397, 400–02 (Tex. Crim. App. 2005) (holding that a
defendant=s
stipulation that was not entered into evidence was nonetheless a judicial admission
that barred him from contesting evidentiary sufficiency).  Thus, we conclude that appellant=s Fifth
Amendment rights do not apply to him discussing the limited facts specifically
related to counts one through four of his original indictment because the State
may not use those facts in a subsequent criminal proceeding, and he cannot be
incriminated based on those facts.[14]  See Chapman,
115 S.W.3d at 7 & n.28
(explaining that a defendant could be compelled to testify against himself if
he was granted immunity that eliminated the threat of incrimination); Renfro,
999 S.W.2d at 561 (explaining that the Fifth
Amendment privilege applies only when there is a Arealistic threat of self-incrimination@).

In
summary, we hold that appellant may not be compelled, over the invocation of
his Fifth Amendment right, to participate in any portion of the objected-to
community supervision conditions, including the requirement of answering
questions two through four of the planned polygraph examination, that would
provide a link to his criminal prosecution for any offense unrelated to the
injury to a child offense that he pled guilty to.[15]  We sustain appellant=s first
point to the extent that the trial court=s
community supervision conditions require him to so participate.  But appellant may be compelled to discuss the
facts particularly related to counts one through four of his indictment because
the State may not use those facts in a future criminal prosecution.  We overrule appellant=s first
point to that degree.

Appellant=s
Requirement to Attend Sex Offender Treatment

In the
title of his second point, appellant argues that the trial court is denying him
due process by requiring him to attend any part of sex offender counseling when
he has not been convicted of a sex offense. 
However, the argument in appellant=s
second point does not assert a constitutional due process denial but relates to
whether Athe
Legislature limited the right to impose sex offender counseling to persons
convicted of a sex offense.@[16]  In other words, while relying on the text of
article 42.12 of the code of criminal procedure, appellant argues that there is
no statutory authority to support the trial court=s
decision to require him to attend sex offender counseling when he pled guilty
to injury to a child, which is not a sex-related offense.  See Tex. Code Crim.
Proc. Ann. art. 42.12, ' 9A(2)
(stating that a person who enters a plea of guilty to one of several specific
statutes, not including the injury to a child statute, qualifies as a Asex
offender@).

As
explained above, appellant=s writ
applications must be reviewed under article 11.072 of the code of criminal
procedure.  Tex. Code
Crim. Proc. Ann. art. 11.072, ' 1; Villanueva,
252 S.W.3d at 397.  AAn
applicant may challenge a condition of community supervision under [article
11.072] only on constitutional grounds.@  Tex. Code Crim. Proc. Ann.
art. 11.072, ' 3(c); see Ex
parte Wilson, 171 S.W.3d 925, 928 (Tex.
App.—Dallas 2005, no pet.) (overruling a challenge in a habeas corpus appeal to
requiring the defendant to participate in the Substance Abuse Felony Program as
the result of a state jail felony guilty plea because the Achallenge
d[id] not raise any constitutional issues, only statutory ones.  Therefore, article 11.072 preclude[d]
appellant from bringing this complaint by habeas corpus@); see
also Ex parte Watson, 601 S.W.2d 350, 352 (Tex.
Crim. App. 1980) (AIt is
well-established that habeas corpus will lie only to review jurisdictional
defects or denials of fundamental or constitutional rights.@).

Appellant=s
complaint in his second point focuses on the trial court=s
allegedly exceeding its statutory authority to impose community supervision
conditions rather than on constitutional issues.  Appellant does not cite any authority to
contend that a trial court=s
imposition of a community supervision term that is not authorized by article
42.12 of the code of criminal procedure qualifies as a constitutional
violation.[17]  Thus, we hold that we do not have
jurisdiction to consider appellant=s
statutory complaint in these habeas corpus appeals.  See Villanueva, 252 S.W.3d at 397; see also Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002) (distinguishing
between constitutional and statutory error); Ex parte Sadberry,
864 S.W.2d 541, 543 (Tex. Crim. App. 1993) (holding
that a habeas corpus proceeding was not the proper avenue to address statutory
noncompliance).  We dismiss appellant=s
second point.

Conclusion

Having
sustained part of appellant=s first
point, to the extent that the trial court=s
decision to incarcerate appellant was based on his refusal to answer questions
two through four of the polygraph examination, we reverse the trial court=s
denial of his applications for a writ of habeas corpus.  We affirm the trial court=s
denials of his writ applications in all other respects and remand this case to
the trial court for further proceedings consistent with this opinion.

 

 

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

 

DAUPHINOT, J. filed a concurring opinion.

 

PUBLISH

 

DELIVERED:  December 16,
2010

 


 
 
 
 
 
 
 
 
 
  

 








 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NOS. 02-09-00266-CR

          02-09-00268-CR

 

 


 
 
 Ex Parte Joseph P. DAngelo
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 371st District Court
OF Tarrant COUNTY

----------

CONCURRING
OPINION ON REHEARING

----------

          I agree with the conscientious majority’s holding that
Appellant cannot be required to waive his Fifth Amendment right against
self-incrimination.  I, nevertheless,
remain concerned that the record before us does not describe the four discrete
acts alleged in the indictment with sufficient specificity to prevent future
prosecution and potential double jeopardy violations.  My concern is based on the fact that when the
State pleads that a sexual offense against a child occurred “on or about” a
specific date, the State may prove any such offense that occurred within the
statute of limitations but before the return of the indictment.[1]  Unless the State is required to elect
specific offenses, or unless the State is judicially estopped
from prosecuting Appellant for any offense that could fall within the conduct
described in the indictment and that occurred within the statute of limitations
but before the date the indictment was returned, then there is no way for a
judge, an accused, a counselor, an attorney, or a polygrapher
to know whether the questions that the majority requires Appellant to answer
involve offenses that the State is judicially estopped
from pursuing.

          I agree that the State is judicially estopped from compelling participation in any condition of
community supervision that would provide a link to his criminal prosecution for
any offense other than the injury-to-a-child offense to which Appellant pled
guilty.  I also agree that the State is
judicially estopped from prosecuting Appellant for
the sexual offenses alleged in the indictment. 
Unfortunately, I have no idea how anyone will know which sexual acts
those are.  Because the law permits such
temporal vagueness in pleading sexual offenses against children, it would be
difficult, if not impossible, for anyone to determine whether Appellant is
being required to answer questions concerning offenses for which the State
could prosecute him as opposed to offenses which the State is judicially estopped from pursuing.

          Because of these concerns that I have
voiced, I concur in the thoughtful opinion of the majority.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PUBLISH

 

DELIVERED:  December 16, 2010











[1]Someone handwrote a
fifth count on appellant=s indictment that
contains language related to the injury to a child offense.  Appellant and his counsel signed the
indictment below the fifth count.





[2]A document titled AConditions of
Community Supervision,@ which appellant signed and which was filed on February 26, 2008,
states that the trial court could Aat any time during
the period of community supervision alter or modify@ the
conditions.  Appellant=s brief does not
contain an issue challenging the trial court=s general authority
to modify his community supervision terms.





[3]The record does not
show why the trial court amended appellant=s community
supervision.





[4]The State=s first petition to
proceed to adjudication was filed in December 2008.  That petition is not contained in the record
on appeal.  In April 2009, the
State filed a second petition, alleging that appellant=s community
supervision should be revoked only because he has not completed sex offender
treatment. Appellant filed a motion to quash the petition on grounds similar to
those that he raised in the writ applications that are the subject of this
appeal.  The record does not contain any
order resolving the State=s second petition.





[5]Because of a motion
that he filed in this court during these appeals, the trial court has released
appellant from confinement through a bond that requires him to report to his
supervision officer once a week and be supervised on house arrest, among other
conditions.  Appellant=s release does not
require dismissal of these appeals.  See Tex. Code Crim. Proc. Ann. art. 44.35 (Vernon 2006).





[6]Along with the
Fifth Amendment to the United States Constitution, appellant cites a provision
of the Texas constitution that states that an accused Ashall not be
compelled to give evidence against himself.@  Tex. Const. art. I, '
10.  However, he does not cite
authority to explain how this provision provides greater rights than its
federal constitutional counterpart. 
Thus, we will examine appellant=s points under
authority related to the rights granted by the federal constitution.  See Lagrone v.
State, 942 S.W.2d 602, 612 (Tex. Crim. App.), cert.
denied, 522 U.S. 917 (1997); Dowthitt
v. State, 931 S.W.2d 244, 254 n.4
(Tex. Crim. App. 1996); see also Carroll v. State, 68 S.W.3d 250, 253 n.3 (Tex.
App.—Fort Worth 2002, no pet.) (op. on remand) (AThe self‑incrimination clause of Article I, Section 10 of
the Texas Constitution gives no greater rights than does the Fifth Amendment of
the United States Constitution.@).





[7]Texas courts are
bound by the United States Supreme Court=s interpretation of
the federal constitution.  Taylor v. State, 10 S.W.3d 673,
681 (Tex. Crim. App. 2000); State v. Guzman, 959 S.W.2d
631, 633 (Tex. Crim. App. 1998).





[8]A probationer could
be compelled to talk about independent offenses if the State grants the
probationer use-immunity.  See Chapman,
115 S.W.3d at 7 & n.28.





[9]Although they are
not binding, we may rely on federal circuit decisions as persuasive
authority.  Mosley v. State, 983 S.W.2d 249, 256 n.13 (Tex. Crim.
App. 1998) (op. on reh=g), cert. denied,
526 U.S. 1070 (1999).  Other states have
also recognized the Fifth Amendment dichotomy of requiring a probationer to
speak about matters related only to the conditions of his probation as opposed
to matters related to different crimes.  See State v. Lumley, 977 P.2d 914, 919 (Kan.
1999).





[10]The trial court
found, based on the letter from The Polygraph Science Center, that appellant
was willing to answer the first question but not the other three
questions.  However, appellant=s writ applications
do not concede that the first question is proper, and appellant has not yielded
on appeal to the State=s position that it was proper. 
Instead, appellant contended during oral argument that a question that
asks about probation violations triggers his Fifth Amendment right.  The trial court=s findings of fact
do not address appellant=s Fifth Amendment
rights in relation to questions one, two, and four; rather, the trial court
found that appellant=s refusal to answer question three was dispositive of the relief
that he requested in the applications. 
We are addressing the first, second, and fourth questions because, as
explained below, we disagree with the trial court=s conclusion that
appellant does not have a Fifth Amendment right to refuse to answer question
three.





[11]We also note that
question three is limited time-wise to isolation of a child since appellant=s been on
probation; thus, the question clearly relates to a potentially new offense.





[12]Furthermore,
appellant=s community
supervision may not be revoked for simply asserting his Fifth Amendment right
to not answer questions two through four. 
See Murphy, 465 U.S. at 438, 104 S. Ct. at 1148 (AOur decisions have
made clear that the State could not constitutionally carry out a threat to
revoke probation for the legitimate exercise of the Fifth Amendment privilege.@); Chapman,
115 S.W.3d at 6.





[13]The State also
represents that appellant Acannot now be
prosecuted for any of the . . . indicted offenses.@  We note that the judicial estoppel doctrine
prevents parties from prevailing in one phase of a case on an argument and then
relying on a contradictory argument to prevail in another phase.  See Schmidt v. State, 278 S.W.3d 353, 358 (Tex. Crim. App. 2009); Davidson v.
State, 737 S.W.2d 942, 948 (Tex. App.—Amarillo
1987, pet. ref=d) (explaining that
judicial estoppel prevents a Aparty who has taken
a position in an earlier proceeding from taking a contrary position at a later
time,@ and therefore
holding that a defendant was prohibited on appeal from contesting the cause of
a victim=s death when the
defendant=s counsel conceded
at trial that the death was caused by gunshot wounds).





[14]In the trial court,
within a response to one of appellant=s writ applications,
the State claimed that sex offender conditions were appropriate for appellant=s community
supervision, even though he did not plead to a
sex-related offense, because the underlying facts of appellant=s case were sexual
in nature.  In an attempt to prove its
claim, the State attached police reports, witness statements, and medical
records specifically describing an event that allegedly occurred on July 14,
2004.  We conclude that the State=s concessions
preclude it from prosecuting appellant for any crimes (other than the crime to
which he has pled guilty) related to the alleged facts occurring during that
event on that date as described in those documents; consequently, appellant may
be compelled to discuss only those alleged facts.





[15]We do not express any
opinion on whether a trial court=s requirement of a
probationer to answer questions about independent criminal activity would be
constitutional if the probationer agreed to answer such questions as a
particular term of his plea bargain agreement and waived his Fifth Amendment
rights at the time of the agreement.





[16]Appellant=s writ applications
in the trial court likewise do not contain argument specifically related to a
violation of due process because of his required submission to sex offender
counseling generally.  A defendant may
forfeit constitutional complaints by not raising them in the trial court.  Fuller v. State, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 904 (2009); Alexander v. State, 137 S.W.3d
127, 130–31 (Tex. App.—Houston [1st Dist.] 2004, pet. ref=d) (holding that a
due process complaint was forfeited by failure to assert the complaint in the
trial court).





[17]In his response to
the State=s motion for
rehearing, appellant contends that A[s]ubjecting a defendant to sex offender counseling and
conditions absent a conviction for a sexual offense violates due process.@  But the sole case that appellant cites for
that proposition contains a narrower holding. 
Specifically, it states that a parole board cannot impose sex offender
conditions on someone who has not been convicted of a sex offense when those
conditions are imposed without procedural due process such as an opportunity to
contest the conditions at a hearing.  Coleman
v. Dretke, 395 F.3d
216, 225 (5th Cir. 2004), reh=g en banc denied, 409 F.3d 665 (5th Cir. 2005), cert. denied, 546 U.S. 938
(2005); see Ex parte Campbell, 267 S.W.3d 916,
926 (Tex. Crim. App. 2008) (AColeman=s holding was about
what process must be afforded to the releasee before
sex offender conditions may be imposed, not about whether sex offender
conditions may be imposed at all.@).  Neither of appellant=s points directly challenge the procedure by which the trial court imposed sex
offender conditions.





[1]Sledge v. State, 953 S.W.2d 253,
255–56 (Tex. Crim. App. 1997).