## OHIO *v.* REINER

No. 00–1028.   Decided March 19, 2001

PER CURIAM.

The Supreme Court of Ohio here held that a witness who denies all culpability does not have a valid Fifth Amendment privilege against self-incrimination. Because our precedents dictate that the privilege protects the innocent as well as the guilty, and that the facts here are sufficient to sustain a claim of privilege, we grant the petition for certiorari and reverse.

Respondent was charged with involuntary manslaughter in connection with the death of his 2-month-old son Alex. The coroner testified at trial that Alex died from "shaken baby syndrome," the result of child abuse. He estimated that Alex's injury most likely occurred minutes before the child stopped breathing. Alex died two days later when he was removed from life support. Evidence produced at trial revealed that Alex had a broken rib and a broken leg at the time of his death. His twin brother Derek, who was also examined, had several broken ribs. Respondent had been alone with Alex for half an hour immediately before Alex stopped breathing. Respondent's experts testified that Alex could have been injured several hours before his respiratory arrest. Alex was in the care of the family's babysitter, Susan Batt, at that time. Batt had cared for the children during the day for about two weeks prior to Alex's death. The defense theory was that Batt, not respondent, was the culpable party.

Batt informed the court in advance of testifying that she intended to assert her Fifth Amendment privilege. At the State's request, the trial court granted her transactional immunity from prosecution pursuant to Ohio Rev. Code Ann. § 2945.44 (1999). She then testified to the jury that she had refused to testify without a grant of immunity on the advice of counsel, although she had done nothing wrong. Batt denied any involvement in Alex's death. She testified that she had never shaken Alex or his brother at any time, specifically on the day Alex suffered respiratory arrest. She said she

was unaware of and had nothing to do with the other injuries to both children. The jury found respondent guilty of involuntary manslaughter, and he appealed.

The Court of Appeals of Ohio, Sixth District, reversed respondent's conviction on grounds not relevant to our decision here. The Supreme Court of Ohio affirmed the reversal, on the alternative ground that Batt had no valid Fifth Amendment privilege and that the trial court's grant of immunity under § 2945.44 was therefore unlawful.* 89 Ohio St. 3d 342, 358, 731 N. E. 2d 662, 677 (2000). The court found that the wrongful grant of immunity prejudiced respondent, because it effectively told the jury that Batt did not cause Alex's injuries.

The court recognized that the privilege against self-incrimination applies where a witness' answers "could reasonably 'furnish a link in the chain of evidence' " against him, id., at 352, 731 N. E. 2d, at 673 (quoting *Hoffman* v. *United States*, 341 U. S. 479, 486 (1951)). *Hoffman*, it noted, requires the trial court to determine whether the witness has correctly asserted the privilege, and to order the witness to answer questions if the witness is mistaken about the danger of incrimination. *Ibid.* The court faulted the trial judge for failing to question sufficiently Batt's assertion of the privilege. It noted that the Court of Appeals, in finding a valid privilege, failed to consider the prosecutor's suggestion that Batt's testimony would not incriminate her, and Batt's denial of involvement in Alex's abuse when questioned by the Children's Services Board. The court held that "Susan Batt's

---

*Ohio Rev. Code Ann. § 2945.44 (1999) states in pertinent part: "In any criminal proceeding . . . if a witness refuses to answer or produce information *on the basis of his privilege against self-incrimination,* the court of common pleas . . . unless it finds that to do so would not further the administration of justice, shall compel the witness to answer or produce the information, if . . . [the prosecuting attorney so requests and] . . . [t]he court . . . informs the witness that by answering, or producing the information he will receive [transactional] immunity . . . ." (Emphasis added.)

[trial] testimony did not incriminate her, because she denied *any* involvement in the abuse. Thus, she did not have a valid Fifth Amendment privilege." 89 Ohio St. 3d, at 355, 731 N. E. 2d, at 675 (emphasis in original). The court emphasized that the defense's theory of Batt's guilt was not grounds for a grant of immunity, "when the witness continues to deny any self-incriminating conduct." *Ibid.*

The Supreme Court of Ohio's decision that Batt was wrongly granted immunity under § 2945.44 (and consequently, that reversal of respondent's conviction was required) rested on the court's determination that Batt did not have a valid Fifth Amendment privilege. In discussing the contours of that privilege, the court relied on our precedents. We have observed that "this Court retains a role when a state court's interpretation of state law has been influenced by an accompanying interpretation of federal law." *Three Affiliated Tribes of Fort Berthold Reservation* v. *Wold Engineering, P. C.,* 467 U. S. 138, 152 (1984). The decision at issue "fairly appears . . . to be interwoven with the federal law," and no adequate and independent state ground is clear from the face of the opinion. *Michigan* v. *Long,* 463 U. S. 1032, 1040–1041 (1983). We have jurisdiction over a state-court judgment that rests, as a threshold matter, on a determination of federal law. See *Merrell Dow Pharmaceuticals Inc.* v. *Thompson,* 478 U. S. 804, 816 (1986) ("[T]his Court retains power to review the decision of a federal issue in a state cause of action"); *St. Louis, I. M. & S. R. Co.* v. *Taylor,* 210 U. S. 281, 293–294 (1908).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U. S. Const., Amdt. 5. As the Supreme Court of Ohio acknowledged, this privilege not only extends "to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." *Hoffman,* 341 U. S., at 486. "[I]t need only be evident from the

implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.,* at 486–487.

We have held that the privilege's protection extends only to witnesses who have "reasonable cause to apprehend danger from a direct answer." *Id.,* at 486. That inquiry is for the court; the witness' assertion does not by itself establish the risk of incrimination. *Ibid.* A danger of "imaginary and unsubstantial character" will not suffice. *Mason* v. *United States,* 244 U. S. 362, 366 (1917). But we have never held, as the Supreme Court of Ohio did, that the privilege is unavailable to those who claim innocence. To the contrary, we have emphasized that one of the Fifth Amendment's "basic functions . . . is to protect *innocent* men . . . 'who otherwise might be ensnared by ambiguous circumstances.'" *Grunewald* v. *United States,* 353 U. S. 391, 421 (1957) (quoting *Slochower* v. *Board of Higher Ed. of New York City,* 350 U. S. 551, 557–558 (1956)) (emphasis in original). In *Grunewald,* we recognized that truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth. 353 U. S., at 421–422.

The Supreme Court of Ohio's determination that Batt did not have a valid Fifth Amendment privilege because she denied any involvement in the abuse of the children clearly conflicts with *Hoffman* and *Grunewald.* Batt had "reasonable cause" to apprehend danger from her answers if questioned at respondent's trial. *Hoffman, supra,* at 486. Batt spent extended periods of time alone with Alex and his brother in the weeks immediately preceding discovery of their injuries. She was with Alex within the potential timeframe of the fatal trauma. The defense's theory of the case was that Batt, not respondent, was responsible for Alex's death and his brother's uncharged injuries. In this setting, it was reasonable for Batt to fear that answers to

possible questions might tend to incriminate her. Batt therefore had a valid Fifth Amendment privilege against self-incrimination.

We do not, of course, address the question whether immunity from suit under § 2945.44 was appropriate. Because the Supreme Court of Ohio mistakenly held that the witness' assertion of innocence deprived her of her Fifth Amendment privilege against self-incrimination, the petition for a writ of certiorari is granted, the court's judgment is reversed, and this case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*