MEMORANDUM OPINION



No. 04-05-00837-CR



David HERNANDEZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 226th Judicial District Court, Bexar County, Texas


Trial Court No. 2004-CR-2490A


Honorable Olin B. Strauss, Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Alma L. López, Chief Justice

 Phylis J. Speedlin, Justice

 Rebecca Simmons, Justice


Delivered and Filed: March 7, 2007


AFFIRMED



 In three issues, David Hernandez appeals his conviction for murder. We affirm the trial
court's judgment.

Background

 On the evening of November 10, 2003, Hernandez was walking in downtown San Antonio
near the Frost Bank Building with his brother Richard and several other young people. A 47 year-old
homeless man was walking down the sidewalk ahead of the group; it was later determined that he
was intoxicated. When Hernandez and his brother reached the man, they began assaulting him,
hitting and kicking him in the face and stomping on his head. The rest of the group ran away. The
victim was left in the Frost Bank parking lot, where he was found at approximately 10:00 p.m. by
the cleaning crew. The victim was transported to the hospital, but subsequently died from "blunt
cranial cerebral injuries." Hernandez and his brother were initially indicted for capital murder, but
the charges were reduced to murder. After a two-day jury trial, Hernandez was convicted of murder
based on the testimony of several witnesses, and sentenced to 25 years imprisonment in the Texas
Department of Criminal Justice, Institutional Division (TDCJ). (1) Hernandez timely appealed.

Analysis

 Trial Court Bias. In his first issue, Hernandez asserts the trial court revealed a bias against
him through its limitation of his right to cross-examine a State's witness about his criminal history
and its comment to Hernandez's attorney in front of the jury. (2) A trial court generally has broad
discretion in maintaining control and expediting trial, and may impose reasonable limitations on
cross-examination. Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); Carroll v. State,
916 S.W.2d 494, 498 (Tex. Crim. App. 1996). A trial court must refrain from making any remark
calculated to convey to the jury its opinion of the case. Brown v. State, 122 S.W.3d 794, 798 (Tex.
Crim. App. 2003). Absent a clear showing of bias on the record, however, a trial court's actions are
presumed to have been correct. Brumit v. State, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A
trial judge's comments which taint the defendant's presumption of innocence in the presence of the
jury constitute fundamental constitutional error requiring no objection. See Blue v. State, 41 S.W.3d
129, 132 (Tex. Crim. App. 2000) (plurality op.).

 During the State's direct examination of Jose Gutierrez, (3) he testified that he had three prior
felony convictions, and that he was currently in jail awaiting transfer to TDCJ on the third felony. 
On cross-examination, counsel for Hernandez asked Gutierrez whether he was a "repeater" because
he had two prior assault convictions; the trial court sustained the State's objection that the question
constituted improper impeachment. Hernandez's counsel then asked Gutierrez whether he had been
arrested twice; again, the court sustained the State's improper impeachment objection. Upon further
questioning, Gutierrez explained that his three prior felony convictions were for theft, unauthorized
use of a motor vehicle, and robbery, and listed the dates of conviction. Hernandez's counsel then
asked, "[b]ack around April 12th, 2005, do you remember that you gave prior testimony in a case?
... You were also wearing orange at that time ... What were you in jail for at that time?" The State
objected to improper impeachment, and the court sustained the objection, stating, "[y]ou know better
than that, counsel." At the bench, defense counsel asked the court "to refrain from making
comments that I know better or otherwise." The court replied, "[c]ounsel, when I sustain three
objections in a row and you continue the same line of questioning, you are going to get that every
time." At the bench, the State disclosed that at the time of his prior testimony Gutierrez was being
held on a misdemeanor charge for supplying alcohol to a minor.

 On appeal, Hernandez complains that the trial court's ruling sustaining the State's objection
and its "admonishment" of his attorney showed that the court had a bias against him, and constituted
an improper comment on the weight of the evidence and conveyed the court's opinion of the case
in violation of article 38.05 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann.
art. 38.05 (Vernon 1979) (providing that in ruling on admissibility of evidence trial judge shall not
discuss or comment on the weight of the evidence, or "make any remark calculated to convey to the
jury his opinion of the case"). A trial court improperly comments on the weight of the evidence if
it makes a statement that implies approval of the State's argument, indicates disbelief in the
defendant's position, or diminishes the credibility of the defense's approach to the case. Simon v.
State, 203 S.W.3d 581, 590 (Tex. App.--Houston [14th Dist.] 2006, no pet.).

 The record does not support Hernandez's contention. The court's ruling and accompanying
statement did not constitute a comment on the weight of the evidence, and did not convey the judge's
opinion of Hernandez's guilt or innocence or reflect a bias against Hernandez. See Jasper, 61
S.W.3d at 420-22. Further, the jury heard evidence establishing the nature of Gutierrez's three prior
convictions and his current incarceration, and Hernandez was permitted to cross-examine Gutierrez
about whether he had any deals with the State concerning his testimony and whether he had a motive
to lie. See Carpenter v. State, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) (exposing a witness's
motivation to testify for or against the State is a proper and important purpose of cross-examination). 
In addition, Gutierrez later testified to the very information Hernandez had sought to elicit, stating
that he was "locked up for giving alcohol to a minor" when he testified previously regarding this
incident. Therefore, any error in sustaining the State's objection to Hernandez's question was
rendered harmless when the same facts were otherwise admitted. See Gonzales v. State, 831 S.W.2d
347, 354 (Tex. App.--San Antonio 1992, pet. ref'd). Finally, the court's statement to counsel that
he "knew better" after he sustained the third objection was a permissible expression of the court's
frustration with counsel's continued line of questioning, and was not an indication of the court's
opinion of the case or of a bias against Hernandez. See Jasper, 61 S.W.3d at 421 ("a trial judge's
irritation at the defense attorney does not translate to an indication as to the judge's views about the
defendant's guilt or innocence"); Resendez v. State, 160 S.W.3d 181, 189 (Tex. App.--Corpus
Christi 2005, no pet.) (court's admonishments to defense counsel to "quit testifying" and that counsel
had engaged in inappropriate questioning tactics were not improper comments in violation of article
38.05). Hernandez's first issue is overruled.

 Witness's Assertion of Fifth Amendment Privilege. In his second issue, Hernandez asserts
he was prevented from presenting his defense when the trial court permitted a potential defense
witness, Alex Medina, (4) to assert a "nonexistent" Fifth Amendment privilege against self-incrimination, in violation of Hernandez's federal and state due process rights. Specifically,
Hernandez argues Medina had no risk of self-incrimination in the murder case because the State had
already chosen not to charge him, and Medina had not given a prior sworn statement that could
support a perjury charge if his trial testimony differed.

 At the beginning of the defense case, Hernandez indicated his intention to call Alex Medina,
who was in jail on a pending motion to revoke felony probation (MTR) in another case. After some
discussion about whether Medina already had an attorney on the MTR and whether that attorney
could be present during Medina's testimony, or whether an attorney needed to be appointed for
Medina, the case was recessed for lunch. After the recess, defense counsel indicated that an attorney
had been appointed for Medina who "would not allow him to testify," and that the defense would
rest. Outside the jury's presence, Alex Medina took the stand and invoked his Fifth Amendment
right not to testify as to "all the questions asked" both personally and through his attorney. 
Hernandez raised no objection to Medina's assertion of the privilege against self-incrimination at
that time, or to the procedure used to invoke the privilege. (5) During the punishment phase, the
defense again called Medina and he again asserted his Fifth Amendment privilege outside the jury's
presence. At that time, Hernandez objected that Medina had no risk of self-incrimination and was
not entitled to assert the privilege. Defense counsel was permitted to make a bill of exception with
respect to Medina's expected testimony through Detective Roberts who stated that Medina told him
that David Hernandez did not assault the victim; Medina stated that the assault was committed by
Richard Hernandez and a man named Sergio.

 The Fifth Amendment provides that, "[n]o person ... shall be compelled in any criminal case
to be a witness against himself." U.S. Const., amend. V. The Fifth Amendment privilege against
self-incrimination protects only witnesses who have "reasonable cause to apprehend danger from a
direct answer." Hoffman v. United States, 341 U.S. 479, 486 (1951). However, the privilege extends
not only to answers that would directly support a conviction, but also to answers which would
"furnish a link in the chain of evidence needed to prosecute the claimant." Ohio v. Reiner, 532 U.S.
17, 20 (2001) (per curiam) (quoting Hoffman, 341 U.S. at 486); Barcenes v. State, 940 S.W.2d 739,
747 (Tex. App.--San Antonio 1997, pet. ref'd). The inquiry into whether a witness has a valid Fifth
Amendment privilege is for the trial court; mere assertion of the privilege does not by itself establish
a risk of incrimination. Reiner, 532 U.S. at 21. When a witness invokes his Fifth Amendment
privilege on the advice of counsel, the trial court is not obligated to make any further determination
to ascertain whether assertion of the privilege is valid. Boler v. State, 177 S.W.3d 366, 371 (Tex.
App.--Houston [1st Dist.] 2005, pet. ref'd); Suarez v. State, 31 S.W.3d 323, 329 (Tex. App.--San
Antonio 2000, no pet.).

 Here, it is clear from the record that the basis for Alex Medina's assertion of the privilege
was a legitimate risk of self-incrimination in the murder case. Medina's attorney testified at the
motion for new trial hearing that after her appointment she reviewed Hernandez's written statement
about the murder, which included the statement that, "Alex ran up and hit the victim in the face."
She was concerned that Medina would incriminate himself if he testified at Hernandez's trial, and
advised him of his Fifth Amendment rights. The attorney testified that she did not "instruct" Medina
not to testify; rather, he independently decided not to testify based on her explanation of his rights,
and never changed his mind. Hernandez asserts there was no risk of self-incrimination because the
State had already decided not to charge Medina with the murder. However, there was nothing
preventing the State from subsequently deciding to charge Medina with murder if incriminating
evidence was discovered during Hernandez's trial, or at any time thereafter. See Tex. Code Crim.
Proc. Ann. art. 12.01(1)(A) (Vernon Supp. 2006) (providing that there is no statute of limitations
for the offense of murder). A witness's constitutional right not to incriminate himself is superior to
a defendant's constitutional right to compel a witness to testify. Suarez, 31 S.W.3d at 329; Ellis v.
State, 683 S.W.2d 379, 383 (Tex. Crim. App. 1984). A trial court "cannot compel a witness to
answer unless it is perfectly clear, from a careful consideration of all the circumstances in the case,
that the witness is mistaken in asserting the privilege, and that the answer cannot possibly tend to
incriminate the witness." Grayson v. State, 684 S.W.2d 691, 696 (Tex. Crim. App. 1984). 

 In Reiner, the Supreme Court reiterated that even a witness who denies all culpability may
have a valid Fifth Amendment privilege against self-incrimination, for example, when the witness
was present with the victim during the relevant period and the defendant's theory of defense places
blame on the witness. Reiner, 532 U.S. at 21-22 (holding baby-sitter who denied any culpability had
legitimate Fifth Amendment privilege in involuntary manslaughter trial of child's father where baby-sitter was with the child during the relevant time-frame and father's defense was that baby-sitter was
at fault); see also Suarez, 31 S.W.3d at 329 (even when a co-defendant has pled guilty and been
sentenced in connection with the offense, he may still properly invoke his Fifth Amendment
privilege because if his testimony contradicts any previous judicial admissions he could be subject
to a perjury charge). Here, Jose Gutierrez's testimony for the State placed Alex Medina at the scene
during the assault, and Hernandez's written statement, although not admitted into evidence,
implicated Medina in the assault, revealing a potential for self-incrimination if Medina testified. See
Reiner, 532 U.S. at 21-22. We hold that the trial court did not err when it accepted Medina's
invocation of his privilege on the advice of his attorney as legitimate. Hernandez's second issue is
overruled.

 Prosecutorial Misconduct. In his third issue, Hernandez asserts the trial court erred in
denying his motion for new trial which alleged prosecutorial misconduct based on the prosecutor
improperly requesting that a "new" attorney be appointed to represent Alex Medina, and intimidating
Medina into asserting his Fifth Amendment right not to testify. On appeal, Hernandez also claims
the prosecutor withheld exculpatory Brady (6) material discovered during trial. The trial judge is the
trier of fact at a hearing on a motion for new trial, and we will not disturb the judge's findings unless
an abuse of discretion is demonstrated. Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App.
2004); State v. Garza, 143 S.W.3d 144, 148 (Tex. App.--San Antonio 2004, pet. ref'd). The
appellate court does not substitute its judgment for that of the trial court, but rather decides whether
the court's decision was arbitrary or unreasonable. Garza, 143 S.W.3d at 148. We view the
evidence in the light most favorable to the trial court's ruling, deferring to its credibility
determinations, and presume all reasonable factual findings that could have been made in support
of the court's ruling. Charles, 146 S.W.3d at 208. A trial court abuses its discretion in denying a
motion for new trial only when no reasonable view of the record could support its ruling. Id.

 With respect to the prosecutor's role in the appointment of an attorney to represent Medina,
the evidence developed at the motion for new trial hearing was that: (1) in early 2005, Javier Padilla
was appointed to represent Medina on an arson charge to which he pled guilty and received
probation; (2) Padilla completed his representation of Medina and submitted his payment voucher
to the court, but did not file a motion to withdraw; (3) at the time of Hernandez's trial in November
2005, Medina was in custody on a pending MTR; (4) when counsel for Hernandez expressed an
intention to call Medina as a defense witness, it was discussed and agreed that Medina needed to be
represented by an attorney for purposes of his potential testimony in Hernandez's murder trial; (5)
defense counsel had previously obtained permission from Padilla to visit with Medina, but Padilla
had not discussed with Medina his potential testimony in the murder case, "did not know what
Medina's interests were" in the murder case, and was "not really representing" Medina on the MTR;
(6) a prosecutor in Hernandez's case called the court coordinator of the court in which Medina's
MTR was pending, inquired "whether" an attorney had been appointed yet to represent Medina on
the MTR, and indicated that Medina "needed" an attorney for purposes of his potential testimony
in the murder case; (7) the court coordinator appointed an attorney whose name was next on the
appointment list to represent Medina on the MTR and for purposes of his potential testimony; and
(8) defense counsel objected to the appointment of the new attorney instead of Padilla to represent
Medina. In denying the motion for new trial, the trial court noted that the common practice in Bexar
County criminal district courts is to appoint a different attorney to represent a defendant if he
receives a subsequent MTR. Based on the record, we cannot say the trial court's finding that the
prosecutor did not engage in misconduct is unreasonable or arbitrary.

 In addition, there was no evidence presented at the motion for new trial hearing which would
support a finding that the prosecutor intimidated Medina into asserting his Fifth Amendment
privilege. Hernandez's claim of intimidation was based on the fact that the prosecutor admittedly
had a short (less than one minute) conversation with Medina during a break after he had been
appointed counsel and without counsel's permission. At the hearing, the prosecutor admitted she
spoke to Medina even though she knew he had an appointed attorney at that point; she stated that
she asked him whether he was going to testify, whether he had spoken to the defense attorneys, and
what he had told them. The prosecutor conceded at the hearing that her actions were improper, but
asserted that she had no intent to intimidate Medina. Notwithstanding the prosecutor's improper
conduct, all of the testimony at the hearing was that Medina "did not appear intimidated," never said
he felt intimidated, and never changed his mind about not testifying. Moreover, Medina's appointed
counsel testified that she had conferred with Medina and he had made the decision not to testify
before the prosecutor spoke with him. Based on this evidence, the trial court did not abuse its
discretion in denying Hernandez's motion for new trial.

 Finally, Hernandez claims the prosecutor withheld exculpatory Brady material consisting of
Medina's statement to her during a recess that the man in the court room, i.e., Hernandez, was not
present at the scene of the assault. Ex parte Richardson, 70 S.W.3d 865, 870 (Tex. Crim. App.
2002) (to establish a due process violation under Brady, a defendant must show the State failed to
disclose evidence which was favorable to the defendant and material to the outcome of the trial). 
While clearly exculpatory, the fact that Medina claimed that Hernandez was not present at the assault
was well known to defense counsel; indeed, it was the reason that Medina was called as a defense
witness. The record reflects that Hernandez's attorneys visited with Medina in jail the night before
trial, and showed him a photograph of Hernandez; Medina told defense counsel at that time that
Hernandez was not there during the assault. The prosecutor had a duty to disclose Medina's
statement to Hernandez's attorneys under Brady, but no harm flowed from the non-disclosure
because defense counsel already had the exculpatory information. In addition, even if the prosecutor
had immediately revealed Medina's statement to Hernandez's attorneys, there is no indication in the
record that it would have changed the fact that Medina planned to, and did repeatedly, assert his Fifth
Amendment privilege not to testify. Accordingly, Hernandez failed to show the withheld evidence
was "material." See Richardson, 70 S.W.3d at 870 ("materiality" prong of Brady analysis requires
"a reasonable probability that had the evidence been disclosed, the outcome of the trial would have
been different"). Hernandez's third issue is overruled.


 Based on the foregoing reasons, the trial court's judgment is affirmed.


 Phylis J. Speedlin, Justice


Do Not Publish



1. Appellant's brother, Richard Hernandez, was also convicted of murder and received a determinate
sentence of 10 years in a separate trial. 
2. Hernandez also incorporates an argument that the court's ruling violated his confrontation rights under the
state and federal constitutions. However, Hernandez did not object on Confrontation Clause grounds in the trial
court, and has thus failed to preserve that issue for appeal. Tex. R. App. P. 33.1(a); Reyna v. State, 168 S.W.3d 173,
179 (Tex. Crim. App. 2005); Paredes v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).
3. Gutierrez was part of the group of young people who were present and witnessed the assault.
4. Medina was also part of the group that was present at the time of the assault.
5. Citing cases in which the Fifth Amendment privilege was invoked in civil proceedings, Hernandez
complains that "blanket assertions of the privilege are not permitted," and the privilege is waived unless raised in
response to each specific inquiry. Hernandez waived any complaint to the procedure used to assert the privilege by
failing to object in the trial court. Tex. R. App. P. 33.1(a). 
6. Brady v. Maryland, 373 U.S. 83 (1963) (prosecution has affirmative duty to disclose material, exculpatory
evidence to an accused).