IN THE COURT OF CRIMINAL APPEALS

OF TEXAS






NOS. PD-0064-11 & PD-0065-11






WILLIAM KYLE WALTERS, Appellant


v.


THE STATE OF TEXAS






ON DISCRETIONARY REVIEW

FROM THE FIFTH COURT OF APPEALS,

DALLAS COUNTY





 Womack, J., delivered the opinion of the unanimous Court.



 In September, 2007, a jury found the appellant guilty of two counts of aggravated assault
with a deadly weapon. (1) In each case, the trial court sentenced the appellant to 40 years'
confinement, to run concurrently, and a $2,500 fine. In December, 2010, the Fifth Court of
Appeals affirmed the appellant's convictions in an unpublished opinion. (2) The appellant now
raises one issue for our review. Finding that the Court of Appeals reached the correct conclusion,
but that it did so using an incorrect standard from one of our prior cases, we affirm the judgments
of the lower courts and overrule our earlier opinion in Ross v. State. (3)

I. BACKGROUND

 The appellant and his girlfriend, Kelly West, went to a punk-rock nightclub in Dallas to
see a band perform on the evening of January 10, 2007. West's ex-boyfriend, Brent Stephenson,
was the bouncer at the club. After a disagreement with one of the appellant's friends, Stephenson
forcefully removed the friend from the club. When the friend attempted to re-enter, a fight
ensued, during which the appellant and the friend stabbed multiple people. West witnessed the
fight.

 At trial, the appellant advanced a theory of self-defense. In support, he sought to compel
West's testimony. She refused to testify, citing her Fifth Amendment privilege against self-incrimination. Before the State rested its case-in-chief, the court held a hearing outside the
presence of the jury in which West's testimony was discussed. She was represented by an
attorney, who conveyed to the trial court that West did not intend to testify for fear of
incriminating herself as a party to the offense. After the appellant's attorney proffered West's
expected testimony, West's attorney again stated that West did not wish to testify. Specifically,
West's attorney stated that, though he trusted that the appellant's attorney would only question
West on the subjects proffered, he was also aware of a sworn statement by another witness
alleging that West had screamed, "Get him, baby .... Stab him," during the melee. Afraid that if
West took the stand it might "open the door for everything and could include potentially
incriminating herself," West's attorney said that West would assert her Fifth Amendment
privilege against self-incrimination "out of [an] abundance of caution." The trial court ruled that it
would "respect [West's] assertion of her right not to testify."

 The appellant's attorney then asked that West be compelled to testify only to her
relationship with the appellant, to her previous relationship with the club's bouncer, Stephenson,
and to threats Stephenson had made to the appellant weeks prior to the fight. The trial court
instructed West to take the stand outside the presence of the jury, where, after providing her name,
age, and confirming that she knew the appellant, she refused to answer any further questions
under her Fifth-Amendment privilege against self-incrimination. The trial court ruled that it would
not require West "to testify further."

 The Fifth Court of Appeals affirmed the conviction, citing Ross v. State. (4) The Court held,
"Because West's refusal to testify was asserted on the advice of her attorney, the trial court was
not required to question West or make any further determination." (5) We granted review of the
issue, "Is a court's refusal to compel testimony from a defense witness based on her invocation of
her 5th Amendment rights without a determination of a reasonable basis for 'a real and substantial
fear of prosecution' a violation of Petitioner's rights to due process and due course of law?"

II. DISCUSSION

A. United States Supreme Court Decisions

 The Fifth Amendment, made applicable to the states by the Fourteenth Amendment,
provides that, "no person  shall be compelled in any criminal case to be a witness against
himself." (6) This privilege extends not only "to answers that would in themselves support a
conviction  but likewise embraces those which would furnish a link in the chain of evidence
needed to prosecute the claimant." (7) "It need only be evident from the implications of the question,
in the setting in which it is asked, that a responsive answer to the question or an explanation of
why it cannot be answered might be dangerous because injurious disclosure could result." (8)

 Trial courts are not to simply take the word of potential witnesses who claim to fear
prosecution. In Ohio v. Reiner, the Supreme Court held that a danger of "imaginary and
unsubstantial character" will not suffice. (9) Rather, trial courts are required to inquire into the
source and reasonableness of that fear. (10) The trial judge, in appraising the claim, "must be
governed by his personal perceptions of the peculiarities of the case as by the facts actually in
evidence." (11) Though innocence is no impediment to asserting the Fifth Amendment privilege, the
privilege's protection extends only to witnesses who have "reasonable cause to apprehend danger
from a direct answer." (12)B. Texas Law

 In large part, the opinions of this court on the subject of the Fifth Amendment privilege
have followed the law as provided by the United States Supreme Court. (13) A notable exception -
and, according to the appellant, an incorrect exception - was our opinion in Ross. In Ross, the
defendant called a witness who, after consulting with his attorney, declined to testify on the
grounds that to do so might incriminate him. (14) We held, both succinctly and without citing to any
authority, that if a witness asserted her Fifth Amendment privilege against self-incrimination on
the advice of counsel, "[n]othing further [is] required of the court." (15) 

C. Arguments and Analysis

 The appellant argues that the Court of Appeals should not have followed our opinion in
Ross. He reasons that the Court of Appeals erred in failing to "take into account the [United
States] Supreme Court's requirement that the trial court needed to make a determination of
whether the witness asserting her Fifth Amendment right was indeed putting herself in 'real
danger' of incrimination by answering the proffered question." Further, the appellant argues that
had the trial court made the necessary inquiry, it would have discovered that the witness was in no
real danger of incriminating herself.

 The State presents two responses to this argument. First, the State argues that the trial
court did, in fact, make the requisite inquiry: "Indeed, the trial court made as much of an inquiry
as was possible while protecting [the witness's] right against self-incrimination and the privileged
nature of her conversations with her attorney." Next, the State argues that, regardless, the Court of
Appeals's reasoning was sound in upholding the appellant's conviction, because West faced a
"legitimate risk of self-incrimination." The State does not address the appellant's argument that
our decision in Ross runs contrary to United States Supreme Court authority.

 We agree with the appellant that our earlier opinion in Ross conflicts with United States
Supreme Court case law. In Reiner, the Supreme Court plainly stated that a witness's assertion of
the privilege against self-incrimination was, by itself, insufficient, and that the trial court was
required to inquire into the reasonableness of such an assertion. (16) Our Ross opinion, then, stating
that any assertion provoked by the advice of counsel was sufficient, offers inadequate protection
to a defendant who seeks to compel a witness's testimony. To bring our interpretation of the
federal Constitution in line with that of the Supreme Court of the United States, we must overrule
Ross, and hold that a trial court is required to make an inquiry into the reasonableness of a
witness's assertion of the Fifth Amendment privilege against self-incrimination.

 We agree with the State, however, that the trial court did, in fact, make the requisite
inquiry in compliance with Supreme Court's decisions. A hearing was held outside the presence
of the jury at which the State proffered West's expected testimony, and at which West's attorney
explained that West feared incriminating herself in the face of evidence indicating that she may
have encouraged the stabbing. This would seem, as the State notes, to be about "as much of an
inquiry as was possible while protecting Ms. West's right against self-incrimination and the
privileged nature of her conversation with her attorney." (17) The trial court's inquiry into the
reasonableness of West's invocation of her Fifth Amendment privilege was sufficient to establish
the risk of incrimination.

III. CONCLUSION

 The Court of Appeals's judgment affirming the appellant's conviction was correct because
the trial court's inquiry into the witness's assertion of the privilege was sufficient. We overrule
our earlier opinion in Ross v. State and affirm the judgments of the courts below.


Delivered December 7, 2011.

Publish.
1. See Tex. Pen. Code § 22.02(a).
2. Walters v. State, Nos. 05-08-01244-CR & 05-08-01245-CR, 2010 WL 4983552, 2010 Tex. App. LEXIS
9694 (Tex. App.-Dallas Dec. 9, 2010) (not designated for publication).
3. 486 S.W.2d 327 (Tex. Cr. App. 1972)
4. Id.
5. Walters, 2010 Tex. App. LEXIS 9694, at *4.
6. U.S. Const. amend. V; Malloy v. Hogan, 378 U.S. 1, 6 (1964). 
7. Ohio v. Reiner, 532 U.S. 17, 21 (2001) (quoting Hoffman v. United States, 341 U.S. 479, 486 (1951)).
8. Hoffman, 341 U.S., at 486-87.
9. 532 U.S., at 21 (citing Mason v. United States, 244 U.S. 362, 366 (1917)).
10. Id. ("We have held that the privilege's protection extends only to witnesses who have 'reasonable cause
to apprehend danger from a direct answer.' That inquiry is for the court; the witness' assertion does not by itself
establish the risk of incrimination. A danger of 'imaginary and unsubstantial character' will not suffice." (quoting
Hoffman, 341 U.S., at 486)).
11. Hoffman, 341 U.S., at 486-87.
12. Id., at 486.
13. See, e.g., Reese v. State, 877 S.W.2d 328 (Tex. Cr. App. 1994); Grayson v. State, 684 S.W.2d 691 (Tex.
Cr. App. 1984). 
14. Id., at 328.
15. Id.
16. 532 U.S., at 21 ("That inquiry is for the court; the witness' assertion does not by itself establish the risk of
incrimination."); see also Hoffman, 341 U.S., at 486 ("The witness is not exonerated from answering merely because
he declares that in so doing he would incriminate himself - his say-so does not of itself establish the hazard of
incrimination. It is for the court to say whether his silence is justified, and to require him to answer if it clearly
appears to the court that he is mistaken." (citations and quotations omitted)). 
17. See, e.g., United States v. Washington, 318 F.3d 845, 856-857 (8th Cir. 2003) (trial court did not abuse
its discretion in upholding a witness's claim of privilege where the judge questioned the witness's counsel outside the
presence of the jury, the witness's counsel explained that his client was worried about the possibility of future drug
charges and about the answers he might be forced to give upon cross-examination, and the defendant's counsel was
allowed to attempt to question the witness); United States v. Castro, 129 F.3d 226 (1st Cir. 1997) (trial court did not
abuse its discretion in upholding a witness's claim of privilege after defense counsel proffered expected testimony
from that witness, followed by the witness's taking the stand, outside the presence of a jury, and invoking his Fifth
Amendment privilege).