IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,130

STATE OF KANSAS,
*Appellant*,

v.

CHRISTOPHER SHAWN ADAMS,
*Appellee*.

SYLLABUS BY THE COURT

1.

The Fifth Amendment to the United States Constitution protects a witness from being compelled to testify where the testimony sought exposes the witness to a legitimate risk—meaning a real and appreciable danger—of incrimination, not a hypothetical or speculative one.

2.

A witness cannot invoke the Fifth Amendment privilege against self-incrimination to avoid testifying based on the risk of a *future* perjury prosecution. The possibility of a future perjury prosecution is a hypothetical or speculative risk that every witness faces regardless of whether the witness intends to testify truthfully or falsely and consistently or inconsistently with a prior statement or testimony.

3.

A witness' Fifth Amendment privilege is extinguished by a grant of use and derivative use immunity which protects against the use of compelled testimony in a criminal trial, as well as evidence derived directly or indirectly from it, to the same extent as the Fifth Amendment privilege.

1

4.

Statutory exceptions to immunity allowing prosecution for perjury committed while providing otherwise immunized testimony are constitutional because a grant of immunity need only be as protective as the Fifth Amendment to replace the privilege.

Review of the judgment of the Court of Appeals in 64 Kan. App. 2d 132, 547 P.3d 593 (2024). Appeal from Ellis District Court; THOMAS DREES, judge. Oral argument held December 10, 2024. Opinion filed February 14, 2025. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with him on the briefs for appellant.

*Heather R. Fletcher,* of Johnson Fletcher, LLC, of Hays, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  This case arises from the State's interlocutory appeal in Christopher Adams' criminal case. Adams faces multiple counts of battery based on allegations that he punched two men and pushed his girlfriend, Stephanie Lang, outside a bar. When questioned at the scene, Lang identified Adams as the attacker of a victim who was knocked unconscious and suffered significant injuries. But when called to testify at Adams' preliminary hearing, Lang claimed she did not remember what happened. Based on her inconsistent statements, the State charged Lang with alternative counts of perjury and interference with law enforcement and warned it would charge her with perjury again if she testified the same way at Adams' trial. Before Adams' trial, Lang asserted the Fifth Amendment privilege, citing a risk of incrimination in her pending perjury case and the potential she could face a new charge of perjury if she testified the same way at Adams'

2

trial. Despite the State offering Lang statutory use and derivative use immunity—which would make her trial testimony and any evidence derived from it inadmissible in the pending perjury case—the district court found she could still invoke the Fifth Amendment privilege because the State's grant of immunity would not protect her from a new perjury charge.

A majority panel of the Court of Appeals affirmed the district court, holding that a grant of use and derivative use immunity is insufficient to protect a witness' Fifth Amendment rights when the witness faces an imminent risk of being charged with perjury. Chief Judge Karen Arnold-Burger dissented, arguing the issue was controlled by federal and state court caselaw holding that the threat of a future perjury charge cannot be the basis for invoking the Fifth Amendment privilege since there is no constitutional privilege to lie.

We granted the State's petition for review of the panel majority's decision affirming the district court's ruling that Lang could assert her Fifth Amendment privilege not to testify. For the reasons discussed below, we reverse the panel majority's decision and adopt the relevant aspects of the dissent's rationale. To the extent Lang had a Fifth Amendment privilege not to testify at Adams' trial based on her pending perjury case, it was extinguished by the State's grant of use and derivative use immunity. And Lang's fear of a new perjury charge for testimony she may provide at Adams' trial is not a valid basis for invoking the privilege. We therefore remand to the district court to compel Lang's testimony in Adams' trial under the terms of the State's authorized grant of immunity.

FACTS

The State charged Christopher Adams with aggravated battery for allegedly "sucker punching" and seriously injuring a man outside a Hays bar and grill in September 2021. Neither the man nor onlookers could identify the attacker, but descriptions later

matched that of Adams. Lang reportedly witnessed the crime. When questioned by police during a recorded interview at the scene, Lang said Adams punched a man in the face outside the bar, knocking him to the ground. The State also charged Adams with domestic battery and simple battery based on reports that he grabbed and threw Lang to the ground and punched another man who tried to intervene in the domestic dispute.

At Adams' preliminary hearing, the State called Lang as a witness on the aggravated battery charge. Contrary to her original recorded statements to police, Lang denied seeing Adams punch anyone outside the bar. She said she may not have been truthful with the officers that night because they had threatened to take away her children. Lang also said she could not recall everything she told police because she was very intoxicated. But Lang said she did remember briefly checking the pulse of an unconscious person lying on the ground. The State called one of the officers who questioned Lang at the scene and played the recorded interview in which she implicated Adams in the charged crimes. Ultimately, the magistrate judge found Lang's testimony was not credible and bound Adams over for trial based on other witness testimony.

The prosecutor later charged Lang with perjury for testifying falsely at the preliminary hearing or in the alternative interfering with law enforcement by making false statements to the investigating police officers.

In anticipation of being called to testify at Adams' trial, Lang's counsel sent a letter to the district court advising that Lang intended to invoke the Fifth Amendment privilege against self-incrimination at trial, even if offered immunity for her testimony. Citing the immunity statute's exception for perjury and the risk that she could face a new perjury charge if her testimony "does not align with the State's version of 'the truth,'" Lang claimed any grant of immunity would be inadequate to protect her Fifth Amendment rights.

4

In response to the letter, the State offered Lang use and derivative use immunity under K.S.A. 22-3415(b)(2) in exchange for her trial testimony. The offer made clear that any sworn statements Lang made during Adams' trial could not be used against her in a future criminal trial, including in her ongoing perjury case. But consistent with the plain language of the immunity statute, the offer expressly excluded immunity from perjury for false statements made under oath during Adams' trial. See K.S.A. 22-3415(d) ("No immunity shall be granted for perjury[.]").

At the start of Adams' trial, Lang asserted her Fifth Amendment privilege, raising the same arguments as in her pre-trial letter. After reviewing the State's offer of immunity and given the statute's exception for perjury, the district court agreed with Lang that the immunity offer was insufficient to protect her Fifth Amendment rights because she would not be immunized from a future perjury charge. Based on Lang's invocation of the privilege, the court concluded she was unavailable as a witness. To avoid this outcome, the prosecutor offered to dismiss the existing perjury charge against Lang with prejudice so Adams' trial could proceed. But the court found this solution inadequate because Lang could still face a new perjury charge based on her trial testimony.

Due to the import of Lang's testimony, the State sought an interlocutory appeal under K.S.A. 22-3603 on grounds that the district court's ruling "substantially impaired the State's case" by "effectively suppress[ing] the bulk of [its] evidence."

A majority panel of the Court of Appeals affirmed the district court's ruling that Lang could invoke the Fifth Amendment privilege against self-incrimination due to the "substantive and immediate" risk of a future perjury charge. *State v. Adams*, 64 Kan. App. 2d 132, 138, 547 P.3d 593 (2024). And given the immunity statute's perjury exception, the majority concluded the State's grant of use and derivative use immunity was not coextensive with Lang's Fifth Amendment privilege. 64 Kan. App. 2d at 139.

Chief Judge Arnold-Burger authored a lengthy dissent. She pointed out that the threat of criminal prosecution for perjury, which has long been codified under Kansas law, lies at the core of our justice system and is one every witness faces. But she explained such a threat is not a basis to assert the Fifth Amendment privilege, warning "[i]f that were enough, the search for the truth in courtrooms around this country would come to a screeching halt." *Adams*, 64 Kan. App. 2d at 157 (Arnold-Burger, C.J., dissenting). In support, she cited United States Supreme Court authority addressing the extent of the Fifth Amendment privilege in the context of the federal immunity statute. 64 Kan. App. 2d at 159 (Arnold-Burger, C.J., dissenting) (citing *United States v. Apfelbaum*, 445 U.S. 115, 100 S. Ct. 948, 63 L. Ed. 2d 250 [1980] [holding that immunized testimony cannot be used in a criminal trial for offenses committed *before* the grant of immunity, but statutory exceptions allowing prosecutions for perjury committed during immunized testimony are constitutional]). The Chief Judge would have held Lang could not invoke the Fifth Amendment privilege to avoid testifying at Adams' trial because the State's grant of use and derivative immunity is coextensive with her privilege; thus, Lang faces no risk of incriminating herself in her pending perjury case. And the Chief Judge would have rejected Lang's claim of privilege based on a future charge of perjury because the Fifth Amendment does not confer a privilege to lie. 64 Kan. App. 2d at 163-65 (Arnold-Burger, C.J., dissenting).

We granted review of the State's petition challenging the panel majority's decision. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review); K.S.A. 22-3603 (allowing interlocutory appeals by the State); *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 (1984) (interpreting K.S.A. 22-3603 to permit interlocutory appeals of evidentiary rulings that "substantially impair the state's ability to prosecute the case").

ANALYSIS

The question presented is whether an immunized witness properly invokes the Fifth Amendment privilege based solely on the risk of being charged with perjury in the future. To answer this question, we first consider whether and to what extent Lang had a Fifth Amendment privilege not to testify at Adams' trial. We then will consider whether Lang could continue to assert any such privilege once the State offered use and derivative use immunity for her testimony.

The determination of whether a witness can assert the Fifth Amendment privilege against self-incrimination is a question of law over which this court has unlimited review. *State v. George*, 311 Kan. 693, 706, 466 P.3d 469 (2020).

1. *Whether and to what extent Lang had a Fifth Amendment privilege not to testify at Adams' trial*

"The power of government to compel persons to testify in court or before grand juries and other governmental agencies is firmly established in Anglo-American jurisprudence." *Kastigar v. United States*, 406 U.S. 441, 443, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972). But the government's power to compel testimony is not absolute. The most significant constraint on this power is an individual's Fifth Amendment privilege against compulsory self-incrimination. 406 U.S. at 444.

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. This provision applies to the states through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964); *State v. Brown*, 286 Kan. 170, 173, 182 P.3d 1205 (2008). Section 10 of the Kansas Constitution Bill of Rights also extends a privilege against self-incrimination, which this court has held offers

no less protection than the Fifth Amendment. *State v. Faidley*, 202 Kan. 517, 520, 450 P.2d 20 (1969). Additionally, K.S.A. 60-425 codifies a statutory privilege against self-incrimination. See *State v. Green*, 254 Kan. 669, 679, 867 P.2d 366 (1994) (holding the constitutional protection is broader in scope than that of the statute).

A witness can assert the Fifth Amendment privilege against self-incrimination in any proceeding when he or she reasonably believes a disclosure "could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar*, 406 U.S. at 444-45. Unlike a criminal defendant who "can invoke a blanket privilege not to testify at their own trial, a compelled witness may only assert the privilege on a question-by-question basis and must establish a legitimate risk of incrimination to justify silence." *State v. Showalter*, 319 Kan. 147, 155, 553 P.3d 276 (2024) (citing generally 3 Crim. Prac. Manual § 88:9; comparing scope of the privilege when asserted by an accused versus a compelled witness). A legitimate risk of incrimination presents a real and appreciable danger of incrimination, not a hypothetical or speculative one. *Showalter*, 319 Kan. 147, Syl. ¶ 6, 156 (citing federal cases expressing risk-of-incrimination standard).

In her pretrial letter to the court, Lang argued the Fifth Amendment privilege against self-incrimination protected her from testifying based on a legitimate risk that—if she testifies the same way she did in the preliminary hearing—the State (1) will use her testimony as additional evidence in her pending criminal perjury case and (2) will follow through on its threat to file a second criminal perjury case against her in the future.

We agree with Lang that, before the State offered her use and derivative use immunity, she faced a legitimate risk of incrimination in her pending case if she testified at trial. In that case, the State charged Lang with perjury and, alternatively, interference with law enforcement based on discrepancies between her preliminary hearing testimony and her original statements to law enforcement. Since the State could have used Lang's

8

testimony at Adams' trial to prove she perjured herself at Adams' preliminary hearing, she faced a legitimate risk of incrimination if she were compelled to testify at trial. Lang could therefore invoke her Fifth Amendment privilege at Adams' trial to avoid incriminating herself in *her own* criminal case.

We disagree with Lang, however, that the Fifth Amendment privilege protected her from testifying at Adams' trial based on the risk of a *future* perjury charge. A witness cannot invoke the Fifth Amendment privilege against self-incrimination to avoid testifying based on the risk of a future perjury prosecution for providing false or inconsistent testimony. Any witness testifying under oath faces the prospect of being charged with perjury for providing allegedly false testimony. See K.S.A. 54-105 ("All oaths and affirmations alike subject the party who shall falsify them to the pains and penalties of perjury."); K.S.A. 21-5903(a)(1) (defining perjury as "intentionally and falsely . . . testifying . . . to any material fact upon any oath or affirmation legally administered in any cause, matter or proceeding before any court").

The Fifth Amendment does not shield a witness from the risk of a future perjury charge because there is no constitutional privilege to lie. *Brogan v. United States*, 522 U.S. 398, 404-05, 118 S. Ct. 805, 139 L. Ed. 2d 830 (1998) ("[N]either the text nor the spirit of the Fifth Amendment confers a privilege to lie.") (citing *Apfelbaum*, 445 U.S. at 117 ["[P]roper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely."]). And the privilege is not preemptively available to a witness who may be telling the truth since the issue of whether the testimony is true or false goes to the merits of a potential perjury charge and is irrelevant to whether the privilege is available.

Moreover, the *possibility* of a future perjury prosecution is hypothetical or speculative even when, as here, the witness subjectively fears a perjury charge because the anticipated, compelled testimony may conflict with a prior statement or sworn

9

testimony. Again, this is true regardless of the truth or falsity of the anticipated testimony. The panel majority concedes as much by acknowledging that "[a]ny witness testifying under oath—*even a truthteller*—faces an abstract risk of being charged with perjury by a mistaken or overly zealous prosecutor. That sort of metaphysical chance grounded in the witness' abstract and entirely subjective fear is insufficient" to trigger the Fifth Amendment protection against self-incrimination. 64 Kan. App. 2d at 137 (citing *Ohio v. Reiner*, 532 U.S. 17, 21, 121 S. Ct. 1252, 149 L. Ed. 2d 158 [2001] ["danger of 'imaginary and unsubstantial character' will not suffice"] [quoting *Mason v. United States*, 244 U.S. 362, 366, 37 S. Ct. 621, 61 L. Ed. 1198 (1917)]; *In re Grand Jury Subpoena (McDougal)*, 97 F.3d 1090, 1094 [8th Cir. 1996] [recognizing subjective belief of witness that testimony might result in perjury charge insufficient to permit assertion of privilege against self-incrimination]).

Notwithstanding this precedent, the panel majority concluded Lang had a Fifth Amendment privilege to avoid a potential future charge of perjury. Describing the situation as an "unusual circumstance," the panel found Lang's existing perjury charge, coupled with the State's threat to charge her with perjury again if she repeated her preliminary hearing testimony at trial, transformed the "abstract or hypothetical" danger of being prosecuted for perjury that every witness faces into "the sort of real danger permitting an individual to invoke the privilege." 64 Kan. App. 2d at 138-39. In so finding, however, the majority panel failed to distinguish between the risk to a person when they provide testimony that could be used to prove commission of a crime and the risk to a person when he or she provides false or inconsistent testimony under oath and subjectively fears a future perjury charge. The former is protected by the Fifth Amendment privilege against self-incrimination while the latter is not. As a result, the panel improperly extended the scope of the Fifth Amendment privilege—which never shields a witness from the threat of future exposure for perjury, whatever the nature of the risk. Instead, as Chief Judge Arnold-Burger correctly explained in her dissent, the only legitimate risk of incrimination Lang faced was the danger of incriminating herself in her

pending perjury case, so this was the full extent of her Fifth Amendment privilege. See 64 Kan. App. 2d at 161 (Arnold-Burger, C.J., dissenting).

2. *Whether Lang could continue to assert her Fifth Amendment privilege once the State offered use and derivative use immunity for her testimony*

The district court found Lang retained her Fifth Amendment privilege against self-incrimination despite the State's grant of statutory use and derivative use immunity because she could still face a future charge of perjury for testimony she might give at Adams' trial. The State argues the court's ruling is counter to state and federal court caselaw holding that immunity from use and derivative use is coextensive with the scope of the Fifth Amendment privilege, and thus is sufficient to compel testimony over a claim of the privilege.

Even when a legitimate risk of incrimination is present, the State can still compel a witness to testify by granting immunity that is coextensive with the Fifth Amendment privilege. *Ullmann v. United States*, 350 U.S. 422, 439, 76 S. Ct. 497, 100 L. Ed. 511 (1956) ("Immunity displaces the danger" to be feared by testifying.); *Kastigar*, 406 U.S. at 448 (upholding constitutionality of immunity statutes). To supplant the privilege, the immunity must "supply a complete protection from all the perils against which the constitutional prohibition was designed to guard." 406 U.S. at 450-51. This court and the United States Supreme Court have held the combination of use and derivative use immunity is commensurate with Fifth Amendment protection. This immunity protects against the use of compelled testimony, as well as evidence derived directly or indirectly from it, "in all prosecutions for offenses committed prior to the grant of immunity that would have permitted the witness to invoke his [or her] Fifth Amendment privilege absent the grant." *Apfelbaum*, 445 U.S. at 128; *Kastigar*, 406 U.S. at 453; *State v. Delacruz*, 307 Kan. 523, 534, 411 P.3d 1207 (2018). Such a grant of immunity therefore overcomes a claim of privilege.

11

Here, the State offered Lang use and derivative use immunity in exchange for her testimony at Adams' trial. The offer expressly declared the following relevant conditions about the grant of immunity:

- It was coextensive with the Fifth Amendment privilege against self-incrimination;
- It applied to sworn statements made during Adams' trial, *except for false statements or perjury*;
- It did not apply to any statements made before the first day of Adams' trial (i.e., prior to the grant of immunity);
- It in no way affected the State's prosecution of Lang's ongoing perjury case, other than to render her immunized testimony inadmissible.

Under these conditions, the State would be barred from using Lang's compelled testimony or any inculpatory evidence derived from her testimony against her, with one important exception: prosecutions for perjury committed while giving otherwise immunized testimony. See K.S.A. 22-3415(b)(2) ("Any person granted use and derivative use immunity may be prosecuted for any crime, but the state shall not use any testimony against such person provided under a grant of such immunity or any evidence derived from such testimony."); K.S.A. 22-3415(d) ("No immunity shall be granted for perjury as provided in K.S.A. 21-5903, and amendments thereto, which was committed in giving such evidence."). As a result, Lang's immunized testimony would be inadmissible in her pending perjury case, but she would not be shielded from a future prosecution for perjury based on any false, sworn statements made while testifying. Contrary to Lang's argument and the district court's ruling, this result does not make the grant of immunity insufficient to protect her Fifth Amendment rights. As Chief Judge Arnold-Burger correctly explained:

12

"[T]he proper focus for determining whether a grant of immunity is coextensive with the Fifth Amendment does not require treating the witness as if they had remained silent. Rather, the focus should be on the 'protections conferred by the privilege,' which reflects 'the fact that immunity statutes and prosecutions for perjury committed during the course of immunized testimony are permissible.' [Citations omitted.]" *Adams*, 64 Kan. App. 2d at 159 (Arnold-Burger, C.J., dissenting) (quoting *Apfelbaum*, 445 U.S. at 125-27).

Immunity statutes which provide exceptions for perjury are entirely consistent with the Fifth Amendment since compelled "testimony remains inadmissible in all prosecutions for offenses committed prior to the grant of immunity that would have permitted the witness to invoke his Fifth Amendment privilege absent the grant." *Apfelbaum*, 445 U.S. at 128. In other words, a grant of immunity must only be as protective as the Fifth Amendment to displace the privilege; it need not be broader.

This is where the district court erred. It appears to have conflated the risk of making an incriminating statement in light of an existing criminal charge—which the Fifth Amendment protects against—with the risk of making a future perjurious statement, which is not protected by the Fifth Amendment. The following exchange illustrates the district court's confusion as it considered the State's offer of immunity:

"THE COURT: [Lang] is charged with perjury from a prelim. She's charged, based under your theory that she said, 'I didn't see anything. I don't know who hit who.' Okay?
    If she testifies that way today, that's what she's charged with. If she today testifies, 'I saw the defendant hit the victim,' then she has confessed to the perjury from the prelim.

"MR. ANDERSON [the prosecutor]: Which the State cannot use against her at—

"THE COURT: But you can't grant—

"MR. ANDERSON: —at subsequent hearings in her current—

"THE COURT: But you can't grant that immunity, Mr. Anderson.

13

"MR. ANDERSON: But—

"THE COURT: That's the problem.

"MR. ANDERSON: But I'm not granting her immunity from perjury in that instant. I'm granting her immunity from an incriminating statement. Because she's not committing perjury, she's committing an incriminating statement, and I'd grant[] her immunity from use of that incriminating statement.

"THE COURT: Well, it's all the same thing, Mr. Anderson."

The proper analysis requires us to consider the scope of Fifth Amendment protection and whether the grant of immunity is coextensive with that protection. Here, the State's grant of use and derivative use immunity removed the legitimate risk of incrimination Lang faced because it prevented the State from using any evidence derived directly or indirectly from her testimony at Adams' trial against her in her pending perjury case—which was the basis for her Fifth Amendment privilege. And the immunity grant's term excluding immunity for perjury under K.S.A. 22-3415(d) is consistent with the protections conferred by the Fifth Amendment, which do not extend to the abstract risk of a future perjury charge. Importantly, the same analysis applies when the witness anticipates testifying under oath—truthfully or falsely—and in a manner consistent or inconsistent with prior statements or testimony.

CONCLUSION

Lang's Fifth Amendment privilege, which protects her from being compelled to incriminate herself in her pending perjury case, is extinguishable by a grant of statutory use and derivative use immunity which the State offered in this case. As a result, Lang no longer had a Fifth Amendment privilege. And she could not assert the privilege to avoid a

14

future charge of perjury based on her otherwise immunized testimony because the privilege does not protect against such a risk. Therefore, the district court and the panel majority erred in holding Lang could assert the privilege not to testify on this basis.

The decisions of the district court and the Court of Appeals are reversed and the matter remanded to the district court with directions to compel Lang to testify in Adams' trial under the State's grant of immunity.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.