Filed 7/6/21  P. v. McGlory CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073632 |
| v. | (Super.Ct.No. RIF1500362) |
| LADEDRICK LEQUAN MCGLORY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  L. Jackson Lucky IV, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

While dining at a Mexican restaurant, defendant Ladedrick McGlory became involved in a confrontation with David Rodriguez, after the latter punched defendant in the face. Shortly thereafter, defendant pulled a gun from his pocket and shot at Rodriguez, injuring him in the upper torso. Defendant was charged and convicted[1] with attempted premeditated murder, aggravated assault, two counts of possession of a firearm by a felon, and possession of ammunition. He was sentenced to an aggregate term of 32 years to life and appeals.

On appeal, defendant argues (1) the court abused its discretion and violated defendant's due process rights by permitting the victim to invoke the Fifth Amendment; (2) the prosecutor committed misconduct by not offering the victim immunity, impairing defendant's right to compulsory process to call Rodriguez as a witness; (3) defense counsel was ineffective for failing to object when Rodriguez asserted his Fifth Amendment privilege; (4) the court erroneously imposed a $1500 fee for preparation of the probation report; and (5) the sentence for count 5, possession of ammunition, should have been stayed pursuant to Penal Code section 654. We modify the sentence but otherwise affirm.

---

[1] The first trial ended in a mistrial after the jury failed to reach verdicts on the first two counts. The second trial yielded the verdicts on the first two counts.

## BACKGROUND

On December 28, 2014, David Rodriguez, Andrew Villaneuve and Andrew's girlfriend, Alyssa Northrup, went to Albertaco's restaurant to order Mexican food. At that time, defendant, along with his seven-year old nephew, Tiano, and another adult male, were eating at a table in the restaurant. Villaneuve and Northrup headed to the restroom in the lobby area as Rodriguez went to the counter to order food.

Rodriguez spoke to defendant, asking, "Do I know you?" Villaneuve could hear an argument when he came out of the restroom and saw Rodriguez in a heated conversation with defendant and his companion. Surveillance video showed Villaneuve and Rodriguez were leaning against the wall near the counter when their food order was handed to them, and then showed them starting to walk out. On the way out, words were exchanged between Rodriguez and defendant, and Villaneuve tried to get Rodriguez to leave.

Defendant approached Rodriguez and said, "I know you. You're a fag," a derogatory term referring to members and associates of the Sex Cash gang. Rodriguez turned and punched defendant in the face twice. More words were exchanged, during which Villaneuve escorted Northrup out of the restaurant to the parking lot because he sensed a fight would break out.

Tiano heard Rodriguez say he would take defendant and Tiano out and kill them. Rodriguez turned, slightly lifted his jacket and went for his belt while still "jawing."

3

Tiano thought he saw the handle of a gun in Rodriguez's waist. Then defendant took a gun from his pocket and fired it at Rodriguez.

Rodriguez was struck by a bullet in his upper torso and retreated into the kitchen area of the restaurant. The wound was consistent with a small caliber gun, possibly a .25 caliber. Because the bullet lodged too close to Rodriguez's spine to be safely removed, police could not collect it as evidence. However, investigators determined that because no casings were found at the scene, the gun was probably a revolver rather than a semi-automatic firearm. Rodriguez did not have a weapon on his person when police arrived, and no firearms were found anywhere in the restaurant.

The surveillance video was collected as evidence by investigators and defendant was recognized on the video from prior contacts. An investigator who saw the video recognized defendant and was familiar with the location of his residence, not far from the restaurant. To confirm the identification, a six-pack photo lineup including defendant's picture was shown to the restaurant employee who witnessed the incident and that witness picked defendant's photo, identifying him as the shooter. The investigator then obtained a search warrant for defendant's residence based on this information.

On January 9, 2015, officers surveilled the residence and, after defendant drove away, they searched the residence. In the meantime, other officers conducted a traffic stop of defendant and placed him under arrest. A search of the car revealed a loaded .25 caliber semiautomatic firearm under the front passenger seat.

4

After the traffic stop, defendant was interviewed by the investigator who had recognized him. During the interview, defendant claimed to have no memory of the event, indicating he had been drinking and most of it was a blur. Although he acknowledged that a still photo from the surveillance seemed to show him pointing a "piece," he guessed it must have been a BB gun and did not recall shooting at anyone.

Defendant was charged with attempted murder (Pen. Code, §§ 664, 187, subd. (a), count 1)[2], assault with a semiautomatic firearm (§ 245, subd. (a)(2), count 2), two counts of possession of a firearm by a felon on different dates (§ 29800, subd. (a)(1), counts 3, 4), and possession of ammunition (§ 30305, subd. (a), count 5). Respecting count 1, it was further alleged that the attempted murder was premeditated and deliberate (§ 664, subd. (a)), that defendant personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and that he had personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). As to count 2, it was further alleged that defendant had personally used a firearm (§ 12022.5, subd. (a)), and that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)).

Jury trial commenced on July 20, 2017, after which, the jury could not reach a verdict on counts 1 and 2 but did return guilty verdicts on counts 3 through 5. Retrial of counts 1 and 2 commenced on November 29, 2018 and concluded with guilty verdicts on both counts, along with true findings on all enhancement allegations. Defendant was sentenced to life in prison for count 1 (with a 7-year minimum) with possibility of parole,

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

5

plus a consecutive term of 25 years to life for the gun discharge enhancement. The court stayed a 3-year term for count 2, along with the great bodily injury enhancements for both counts 1 and 2 and the gun use enhancement for count 2. The court imposed concurrent terms of 2 years each for counts 3 through 5.

Defendant timely appealed.

**DISCUSSION**

1.      *Whether the Trial Court Erred When Witness Rodriguez Invoked His Fifth Amendment Privilege.*

a.      *Background*

During in limine proceedings prior to defendant's retrial, the court mentioned an issue relating to an in-custody witness who had been subpoenaed by both the defense and the prosecution. The witness was Rodriguez, the victim named in counts 1 and 2. On November 29, 2018, the court and counsel discussed the victim as a potential witness, with reference to the People's in limine motion to limit admission of his past violent acts as impeachment under Evidence Code section 1103. The court indicated the defense could introduce the prior acts of violence pursuant to Evidence Code section 1103, but if Rodriguez did not testify, his criminal history would be inadmissible.

The parties then proceeded to discuss whether Rodriguez would testify in the trial and he was sworn in to make that determination. Under oath, Rodriguez indicated he understood he would be brought back to court the following week to testify in the jury trial, and that he was currently serving a prison term for a crime committed earlier in the

6

year to which he had pled guilty and waived his appellate rights.  He also stated he understood he would testify about the shooting incident and agreed he would tell the truth.  He was then excused.

However, before he left the courtroom, defense counsel asked if the People would indicate the specific day that he would be called so that Rodriguez could be transported for just that day instead of being transported every day.  The People indicated he was scheduled to testify the following Wednesday.  Before exiting the courtroom, Rodriguez then asked:  "And what I say doesn't - - is, like, immune?  Am I immune to what I say, and will I be charged?"  The court indicated that was a question for the People.

On December 4, 2018, prior to jury selection, Rodriguez appeared in court and the matter was again discussed.  The prosecutor indicated that the People had no intention of granting immunity, so VMB, a panel of conflict defense attorneys, had been contacted and an attorney, Peter Mininsohn, had been appointed to advise Rodriguez.  Mininsohn advised the court that after consulting with Rodriguez, the latter had decided to invoke his right not to testify.  The following exchange between the court and defense counsel took place:

"THE COURT:  All right.  And, Mr. Schaaf [defense counsel], sir, did you want to be heard?

"MR. SCHAAF:  No, your Honor.  I don't think I have any standing to say anything.

7

"THE COURT: Well, I just wanted to make sure, because I believe you had him transported.

"MR. SCHAAF: Yes, your Honor, I did.

"THE COURT: So if you wanted to make any record, I wanted to make sure you had the opportunity.

"MR. SCHAAF: Well, having said that, yes, I did have him transported, as he is obviously the victim in this matter, and I think that he has things that he can say that can clear up this situation, but if Mr. Mininsohn is advising him not to testify, he has that right."

Rodriguez was then asked to personally invoke his Fifth Amendment privilege, and he responded, "I just want to say that I think he did act in self-defense, but I do want to plead the 5th Amendment."

Following the guilty verdicts, defendant made a motion for new trial on the ground the court erred in allowing Rodriguez to invoke the Fifth Amendment. In the motion, which was not accompanied by a sworn declaration by Rodriguez or other relevant evidence, defense counsel for the first time informed the court that Rodriguez had informed counsel that he was armed with a firearm at the time of the shooting incident. Counsel reiterated this assertion orally at the hearing on the motion and argued that

8

insofar as the statute of limitations had expired on the offense of possessing a firearm, Rodriguez could not have been prosecuted for that offense.[3]

The trial court denied the motion, noting that neither side had presented a declaration as to what Rodriguez would or would not have testified, putting defense counsel in the position of being the sole witness to the victim's statement.

b. *Discussion*

Defendant argues that the trial court erred in allowing Rodriguez to invoke his Fifth Amendment privilege without inquiring into the basis for the invocation, thereby abusing its discretion. He contends that if the court had conducted an inquiry into the basis, it would have discovered that the statute of limitations had lapsed for the crime of possession of a firearm by a felon, and that Rodriguez would have testified that he had a gun at the time of the confrontation and that defendant was acting in self-defense.

Respondent argues that any error was forfeited by defendant's failure to object in the trial court. Respondent also agrees that the statute of limitations for the crime of possessing a firearm by a felon had expired, such that the court erred in failing to inquire further. We agree the error was forfeited and we address the merits because defendant separately contends his counsel was ineffective for failing to object.

c. *Forfeiture*

---

[3] Counsel also argued orally that the attorney appointed to advise Rodriguez was not eligible to practice law at the time of the appointment and that Rodriguez was not competently represented. This assertion was rejected by the court because the attorney's ineligibility was more of an administrative suspension. (See *People v. Medler* (1986) 177 Cal.App.3d 927, 930-931.)

It has long been held that a party who does not object to a ruling generally forfeits the right to complain of that ruling on appeal. (See *People v. Simon* (2001) 25 Cal.4th 1082, 1103, and cases cited.) The forfeiture doctrine applies equally in situations in which a defendant fails to object when a court permits a witness to assert the privilege against self-incrimination, and he may not challenge the ruling on appeal. (*People v. Seijas* (2005) 36 Cal.4th 291, 301; *People v. Malone* (1988) 47 Cal.3d 1, 34–35; *People v. Dimitrov* (1995) 33 Cal.App.4th 18, 31–32.)

Here, defendant failed to object to the court's permitting of Rodriguez to invoke his Fifth Amendment privilege, so the issue is forfeited. However, we will address the merits to resolve defendant's claim of ineffective assistance of counsel. (See *People v. Scaffidi* (1992) 11 Cal.App.4th 145, 151, citing *People v. Cox* (1991) 53 Cal.3d 618, 682.)

d.      *On the Merits, Reversal is not Required for Allowing Rodriguez to Invoke His Fifth Amendment Right.*

A defendant has a constitutional right to compulsory process to obtain witnesses in his favor. (*In re Martin* (1987) 44 Cal.3d 1, 29; see also, *Washington v. Texas* (1967) 388 U.S. 14, 19 [87 S.Ct. 1920, 18 L.Ed. 2d 1019].) "'This right is a fundamental element of due process of law.' [Citations.]" (*Martin, supra,* at p. 29.) However, the right is not unqualified and does not entitle a defendant to compel a witness to waive his or her Fifth Amendment rights. (*Taylor v. Illinois* (1988) 484 U.S. 400, 414 [108 S.Ct. 646, 98 L.Ed.2d 798]; *People v. Woods* (2004) 120 Cal.App.4th 929, 938.)

A witness may assert the privilege who has "reasonable cause to apprehend danger from a direct answer." (*Hoffman v. United States* (1951) 341 U.S. 479, 486 [71 S.Ct. 814, 95 L.Ed. 1118] (*Hoffman*).); accord, *Ohio v. Reiner* (2001) 532 U.S. 17, 21 [121 S.Ct. 1252, 149 L.Ed. 2d 158].) "However, 'the witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination.' [Citation.]" (*People v. Seijas*, *supra*, 36 Cal.4th at p. 304.)

To invoke the privilege, a witness need not be guilty of any offense; rather, the privilege is properly invoked whenever the witness's answers "would furnish a link in the chain of evidence needed to prosecute" the witness for a criminal offense. (*Hoffman*, *supra*, 341 U.S. at p. 486 [71 S.Ct. 814, 95 L.Ed. 1118, 1123-1124]; see also *People v. Mincey* (1992) 2 Cal.4th 408, 441.)

To satisfy this standard, "'it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' [Citation.]" (*People v. Cudjo* (1993) 6 Cal.4th 585, 617.)

"A witness, however, may not make a blanket assertion of the privilege against self-incrimination." (*People v. Trujeque* (2015) 61 Cal.4th 227, 267-268.) A witness's "say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified . . . ." (*Hoffman, supra*, 341 U.S. at p. 486.) For this reason, the court is obliged to make a particularized inquiry in connection with each

11

specific area that the questioning party wishes to explore, whether or not the privilege is well-founded.  (*People v. Trujeque*, *supra*, at p. 268.)

"To avoid the potentially prejudicial impact of having a witness assert the privilege against self-incrimination before the jury, we have in the past recommended that, in determining the propriety of the witness's invocation of the privilege, the trial court hold a pretestimonial hearing outside the jury's presence."  (*People v. Mincey*, *supra,* 2 Cal.4th at p. 441; see *People v. Lopez* (1999) 71 Cal.App.4th 1550, 1555 ["Initial inquiries intended to test the validity of the claim should be conducted outside the presence of the jury"].)  While recommended, such a pre-testimonial hearing is not "required."  (*People v. Hill* (1992) 3 Cal.4th 959, 992 [overruled on a different point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13].)  In determining whether a valid privilege exists, the court should "consider the context and circumstances in which [the privilege] is claimed."  (*People v. Ford* (1988) 45 Cal.3d 431, 441.)

We observe that most of the cases discussing this duty by the court refer to situations in which the witness invoked the privilege in response to a particular question while testifying.  (See *People v. Capers* (2019) 7 Cal.5th 989, 1011 ["On review of a witness's successfully invoking the Fifth Amendment privilege, we look only to see whether it is evident from the 'implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'  [Citation.]".)

12

From this it has been held that in order to assert the privilege against self-incrimination a witness must not only be called but must also be sworn. (*People v. Ford, supra*, 45 Cal.3d at p. 440, citing *Ex parte Stice* (1886) 70 Cal. 51, 53; *People v. Harris* (1979) 93 Cal.App.3d 103, 117.) That was not done in this case. For this reason, the People appear to concede that the trial court erred as the statute of limitations had expired as to Rodriguez's possession of a firearm, as well as for the offenses of criminal threats and punching defendant, if those were the reasons for invocation of the right to remain silent.

But it is speculative to assert that Rodriguez's invocation pertained solely to the potential gun possession charge, or even the possible assault-based offenses. It is equally possible Rodriguez also faced potential liability for perjury if his testimony was shown to be untruthful by the video evidence. It is also speculative to assert that Rodriguez actually would have testified to being in possession of a firearm at the time of the offense without a declaration to corroborate this assertion, such as a declaration by Rodriguez attesting to this fact. On this record, defense counsel was the sole witness to the statement by Rodriguez, putting himself in an untenable situation. (Cal. Rules Prof. Conduct, rule 3.7.)

Without an adequate record, we must conclude there could have been other "links in the chain of evidence needed to prosecute" Rodriguez for a criminal offense other than possession of a firearm, including perjury. (*Hoffman, supra,* 341 U.S. at p. 486.) In this respect, we cannot conclude that it clearly appeared to the court that the proffered

13

evidence "cannot possibly have a tendency to incriminate the person claiming the privilege," within the meaning of Evidence Code section 404.

Regarding prejudice (assuming there was error), any error was harmless beyond a reasonable doubt: Tiano testified to seeing the handle of a gun when Rodriguez lifted his jacket up, and other witnesses agreed that the video showed Rodriguez lifting up his jacket and putting his hand near his waist. Because even in the absence of Rodriguez's testimony, defendant was able to present evidence from which he could argue that the victim was armed with a gun, Rodriguez's unavailability did not prejudice the defense.

Further, the record demonstrates Rodriguez has a lengthy criminal record with which the trial court had ruled he could be impeached if he testified. With his credibility impeached, it is not a sure bet that Rodriguez's testimony would have made any difference in the outcome. And because defense counsel did not provide a sworn statement by Rodriguez as the nature of his intended testimony, the record is inadequate to support defendant's claim that Rodriguez would have testified that he had a gun.

There was no error in allowing Rodriguez to invoke the Fifth Amendment.

2.     *Whether the Prosecutor Committed Prejudicial Misconduct By Soliciting the Appointment of Counsel to Advise Rodriguez*

Defendant argues that the prosecutor committed misconduct by "actively soliciting the appointment of counsel to advise Rodriguez to invoke [his right to remain silent]", thereby interfering with defendant's rights to compulsory process and fair trial. Here

14

again, defendant's failure to object results in forfeiture of any claim. Additionally, the record does not support his claim of misconduct.

"'It is well settled that making a timely and specific objection at trial, and requesting the jury be admonished (if jury is not waived), is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal.'" (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1164, citing *People v. Seumanu* (2015) 61 Cal.4th 1293, 1328.)

At the time of the in limine proceeding to discuss whether Rodriguez would testify, the prosecutor stated that it responded to Rodriguez's statement about seeking immunity by requesting appointment of counsel to advise him. Specifically, the prosecutor explained that the People did not want to get into any facts or have Rodriguez relay any information to either party that might be incriminating, in seeking the appointment of outside counsel to advise the witness. Neither defendant nor his counsel objected to the People's refusal to grant immunity, and there is no indication the People were aware of the actual reason for Rodriguez's reluctance to testify. The issue of whether the prosecutor committed misconduct by refusing to grant immunity to Rodriguez was thereby forfeited.

Even if we were to reach the merits of defendant's assertion, we would reject the contention. It is true that a defendant's Sixth Amendment constitutional rights to compel the attendance of witnesses, and to due process, as guaranteed by the Fourteenth Amendment, are violated when the prosecution interferes with the defendant's right to

15

present witnesses. (*People v. Woods*, *supra*, 120 Cal.App.4th at p. 936, citing *People v. Lucas* (1995) 12 Cal.4th 415, 456.)

"To establish a violation of his compulsory process rights, a defendant 'must establish three elements. "First, he must demonstrate prosecutorial misconduct, i.e., conduct that was 'entirely unnecessary to the proper performance of the prosecutor's duties and was of such a nature as to transform a defense witness willing to testify into one unwilling to testify."' [Citation.] Second, he must establish the prosecutor's misconduct was a substantial cause in depriving the defendant of the witness's testimony. [Citation.] . . . Finally, the defendant must show the testimony he was unable to present was material to his defense. [Citation.]' [Citation.]" (*People v. Woods, supra,* 120 Cal.App.4th at p. 936.)

Here, defendant has failed to demonstrate the first prong: that the prosecutor committed misconduct. There is nothing in the record to support an inference that the prosecutor's action was "entirely unnecessary to the proper performance of the prosecutor's duties and was of such a nature as to transform a defense witness willing to testify into one unwilling to testify." On this record, the victim had never communicated a reluctance to testify until the in limine hearing was under way, so the prosecutor could not have intentionally interfered with the defendant's ability to present a defense.

Further, there is no evidence in the record that the prosecutor had communicated a refusal to grant immunity prior to the in-court statement at Rodriguez's second appearance on December 4, 2018. Up to that point, the People had included Rodriguez

16

on their own witness list, and, at the November 29, 2018 appearance, he expressed his willingness to testify. Rodriguez only mentioned immunity after being excused on that date. It was at that point that the prosecutor, not wanting to inquire into the reasons for Rodriguez's request, informed the court of the need to appoint advisory counsel. The record does not show that the People threatened to prosecute Rodriguez to make him reluctant to testify or otherwise intimidate him. In other words, defendant has not shown that the People transformed a defense witness willing to testify into a witness unwilling to testify. On this record, we do not find misconduct.

Further, although defense counsel asserted that Rodriguez would testify that he had a gun in his possession on the night of the incident, he did not obtain a declaration or other sworn statement to that effect. Counsel was the only witness to this possibility. The assertion that Rodriguez would have testified that he was armed with a firearm is therefore based on speculation. Absent such evidence, there was no proper way for the trial court to evaluate prejudice. In other words, even if we could find error in the prosecutor not agreeing to give immunity to Rodriguez, we would be compelled to find it was harmless beyond a reasonable doubt.

3. *Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Failing to Object to Rodriguez's Invocation of the Right to Remain Silent.*

As alluded to previously, defendant asserts he was deprived of effective assistance of counsel based on trial counsel's failure to object when Rodriguez asserted his Fifth Amendment privilege. We disagree.

17

In order to make a claim of ineffective assistance of counsel, defendant must show deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of a reasonable probability of a more favorable outcome in the absence of the deficient performance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687–696 [104 S.Ct. 2052, 80 L. Ed. 2d 674].)  "Finally, it must also be shown that the [act or] omission was not attributable to a tactical decision which a reasonably competent, experienced criminal defense attorney would make."  (*In re Sixto* (1989) 48 Cal.3d 1247, 1257.)

A claim of ineffective assistance of counsel based on a failure to object cannot succeed unless the petitioner shows that the failure to object fell below an objective standard of reasonableness under prevailing professional norms.  (*Strickland v. Washington, supra*, 466 U.S. at pp. 687–688.)  However, the decision whether to object or not is generally a tactical decision and trial counsel's tactical decisions are accorded substantial deference.  (*In re Cordero* (1988) 46 Cal.3d 161, 180; *People v. Ledesma* (1987) 43 Cal.3d 171, 216.)  For this reason, a failure to object seldom establishes counsel's incompetence.  (*People v. Hayes* (1990) 52 Cal.3d 577, 621.)  "'"In order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission." [Citation.]' [Citation.]"  (*People v. Majors* (1998) 18 Cal.4th 385, 403.)

A claim of ineffective assistance of counsel must be rejected on appeal where the record on appeal sheds no light on why counsel acted or failed to act in the manner

18

challenged, and unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267, citing *People v. Wilson* (1992) 3 Cal.4th 926, 936.) "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello*, *supra*, at pp. 266-267.)

Here, the record sheds no light on why defense counsel did not object to Rodriguez's request for immunity or request that the court make the required particularized inquiry into the reasons for the invocation. Further, it does not appear that counsel was asked to explain his tactics, or that if asked, he refused to state what his tactics were. We cannot find ineffective assistance of counsel on this record.

4. *Whether the Court Improperly Imposed the $1500 Fee for Presentence Incarceration.*

Defendant argues, and the People agree, that the sentencing court improperly imposed a fee of $1500 for presentence incarceration because the statute authorizing imposition of that fee does not apply if the defendant was sentenced to prison, as was defendant in this case. We agree.

Section 1203.1c, subdivision (a), provides, "In any case in which a defendant is convicted of an offense and is ordered to serve a period of confinement in a county jail, city jail, or other local detention facility as a term of probation or a conditional sentence, the court may, after a hearing, make a determination of the ability of the defendant to pay

19

all or a portion of the reasonable costs of such incarceration, including incarceration pending disposition of the case."

In construing this statute, we follow well established rules. "'If the statutory language is unambiguous, then its plain meaning controls.' . . . [Citation.]" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1106.) By the plain language of section 1203.1c, the fee is only authorized where the defendant is ordered to serve a period of confinement in local custody *as a condition of probation.* When a prison sentence is imposed, the fee is unauthorized.

A sentence is "unauthorized" where it could not be lawfully imposed under any circumstances in the case. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Accordingly, an unauthorized sentence "is subject to judicial correction whenever the error comes to the attention of the reviewing court. [Citations.]" (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6.)

Here, defendant was sentenced to prison so section 1203.1c, subdivision (a), was, by its plain terms, inapplicable. The sentence must be modified to delete the fee for incarceration costs.

5.      *Whether the Court Should Have Stayed the Term Imposed for Possession of Ammunition Pursuant to Section 654.*

In sentencing defendant, the trial court imposed a term of 2 years for count 4, possession of a firearm by a felon (§ 29800, subd. (a)), which was ordered to run concurrent with count 1, as well as a concurrent term of 2 years for count 5, possession of

ammunition in violation of section 30305, subdivision (a).  In a supplemental opening brief, defendant argues that the term imposed in that count should have been stayed pursuant to section 654.  The People concede the error.  We agree.

Section 654 provides in part that, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  For multiple acts incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.  (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, [disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331, 344].)

Concurrent sentences, like consecutive sentences, constitute multiple punishment and are prohibited by section 654 because the defendant is deemed to be subjected to the term of both sentences although they are served simultaneously.  (*People v. Jones* (2012) 54 Cal.4th 350, 353.)

Here, unlawfully possessed ammunition was loaded into an unlawfully possessed firearm, so multiple punishment is precluded by section 654.  The sentence must be modified to reflect that count 5 is stayed.

### DISPOSITION

The convictions are affirmed.  The concurrent sentence for count 5 is reversed and ordered stayed pursuant to section 654.  Additionally, the fine for presentence incarceration costs pursuant to section 1203.1c is vacated.  The clerk of the superior court

21

is directed to prepare an amended minute order of the sentence and an amended abstract of judgment reflecting these modifications of sentence.

In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:

MILLER_____
J.
SLOUGH_____
J.